**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO  DIVISION**

| | | |
|---|---|---|
| **TIFFANY BISSELL, Individually,** | ) | **CASE NO: 6:21-cv-00924** |
| | ) | |
| *Plaintiff* | ) | |
| | ) | |
| | ) | **VIOLATION OF CIVIL RIGHTS** |
| **vs.** | ) | **(42 U.S.C. § 1983)** |
| | ) | |
| **ELAINE MATA, IN HER INDIVIDUAL** | ) | |
| **CAPACITY;  DANIELLE CLARIDGE, IN** | ) | |
| **HER INDIVIDUAL CAPACITY;  BRITTANY** | ) | |
| **HEMINGWAY,  IN  HER INDIVIDUAL** | ) | |
| **CAPACITY; FELISHA RODRIGUEZ,** | ) | |
| **IN HER INDIVIDUAL CAPACITY;** | ) | |
| **and DOES 1-10, Inclusive.** | ) | **JURY TRIAL DEMANDED** |
| | | |
| **Defendants.** | | |

---

## COMPLAINT

---

Plaintiff **TIFFANY BISSELL** for her complaint against the above-named Defendants,

respectfully states and alleges as follows:

### JURISDICTION

1.  Plaintiffs brings this civil rights lawsuit pursuant to 42 U.S.C. § 1983 redress the deprivation by

Defendants, at all times herein acting under color of state law, of rights, secured to Plaintiff under the

Constitution of the United States, including the Fourth and Fourteenth Amendments.

2.   Jurisdiction is conferred on this Court by 28 U.S.C. Sections 1343(a)(3) and (a)(4), which provide

for original jurisdiction in this Court of all suits brought pursuant to 42 U.S.C. § 1983.  Jurisdiction

is also conferred by 28 U.S.C. § 1331 because claims for relief derive from the Constitution of the

United States and the laws of the United States.

3.     Venue is properly established in the United States District Court for the Western District of Texas pursuant to 28 U.S.C. § 1391, in that the events and circumstances herein alleged occurred in Copperas Cove, Coryell County, Texas and all of the Defendants were either employed at the Texas Department of Family and Protective Services' (hereinafter known as "TDFPS")  office in Copperas Cove, Texas (Coryell County, Texas)   or are residents of Coryell County, Texas where jurisdiction is the United States District Court for the Western District of Texas, Waco, Division.

## PARTIES

4.   At all times relevant to the facts and circumstances in the Complaint, Plaintiff **TIFFANY BISSELL** (hereinafter referred to as "TIFFANY") was a resident of Copperas Cove, Texas which is in Coryell County, Texas. TIFFANY is the biological and natural mother of **MD** (now approximately 5 years old) and **JN** (now approximately 13 years old (fictitious names are used to protect the minors' privacy).  At the time of the incidents giving rise to the causes of action in this Complaint occurred, **MD**   was approximately 3 years old and **CN** was approximately 11 years old. The biological and natural father of the minor **MD**, **JOHN DUMDIE** (hereinafter referred to as "JOHN") is not a party in this lawsuit. The biological and natural father. of **JN**, **SHELDON NOLD** (thereafter referred to as "SHELDON") is not a party in this lawsuit.  At all times relevant herein, prior to the incidents complained of as occurring on September 11, 2019, TIFFANY BISSELL cared for and nurtured her children **MD** and **JN**. and enjoyed the company, companionship, and society of **MD** and **JN** and all other benefits and burdens of her rights of familial association with her children.

5.     At all times applicable herein, Defendant social worker **ELAINE MATA** (hereinafter referred to as "ELAINE) was an individual residing on information and belief, in Coryell County, Texas and an officer, agent, and/or employee of the Texas Department of Family and Protective Services ("TDFPS") and whose acts as alleged herein were performed in her individual capacity and/or under color of state law in Coryell  County, Texas. She is employed by the State of Texas, TDFPS in Copperas Cove, Texas.

6.     At all times applicable herein, Defendant social worker **DANIELLE CLARIDGE**, hereinafter referred to as "DANIELLE) was an individual residing on information and belief, in Coryell County, Texas and an officer, agent, and/or employee of the Texas Department of Family and Protective Services ("TDFPS") and whose acts as alleged herein were performed in her individual capacity and/or under color of state law in Coryell  County, Texas. She is employed by the State of Texas, TDFPS in Copperas Cove, Texas.

7.     At all times applicable herein, Defendant social worker, a supervisor,  **BRITTANY HEMINGWAY** (hereinafter referred to as "BRITTANY)  was an individual residing on information and belief, in Coryell County, Texas and an officer, agent, and/or employee of the Texas Department of Family and Protective Services ("TDFPS") and whose acts as alleged herein were performed in her individual capacity and/or under color of state law in Coryell  County, Texas. She is employed by the State of Texas, TDFPS in Copperas Cove, Texas.

8.     At all times applicable herein, Defendant social worker, regional supervisor, **FELISHA RODRIGUEZ**  (hereinafter referred to as "FELISHA") was an individual residing on information and belief, in Coryell County, Texas and an officer, agent, and/or employee of the Texas Department of Family and Protective Services ("TDFPS") and whose acts as alleged herein were performed in her individual capacity and/or under color of state law in Coryell  County, Texas. She is employed by the State of Texas, TDFPS in Copperas Cove, Texas.

9.     Plaintiff is informed and believes, and on such basis alleges, that each of the named Defendants was and is the agent, employee, principal, employer and/or co-conspirator of each of the remaining Defendants and/or vice versa.  In addition, Plaintiff is informed and believes, and on such basis alleges, that the Defendants named herein above, and each of them, are responsible in some manner for the occurrences herein alleged, and that each of the above-named Defendants conspired with, and/or sided and/or abetted and/or jointly collaborated with each of the remaining Defendants  in committing the acts

herein alleged.

10.     Plaintiff is informed and believes and on such basis alleges that each of the above named Defendants and settling co-conspirators was acting in their individual capacities and/or under the color of state law in committing the acts herein alleged, and that in doing the things herein alleged Defendants, and each of them, were acting within their individual capacities.

11.     Plaintiff is ignorant of the true names and capacities of those Defendants sued herein as DOES 1 through 10, and for that reason have sued such Defendants under such fictitious names.  Plaintiff reserves his rights, and will seek leave of Court to amend this Complaint to identify said Defendants when their identities have been ascertained.  Plaintiff is informed and believes and thereon alleges that each of the fictitiously named Defendants was in some manner liable and legally responsible, in that their conduct caused the damages and injuries set forth herein.

12.     Plaintiff is informed and believes and on such basis alleges that at all relevant times, Defendants, and each of them, were the knowing agents and/or alter egos of one another, and that Defendants directed, ratified, and/or approved the conduct of each of the other Defendants, and each of their agents or employees, and are therefore vicariously liable for the acts and omissions of their co-defendants, their agents and employees, as more fully alleged herein. Moreover, all of the Defendants and identified persons agreed upon, approved, ratified, and/or conspired together to commit all of the acts and/or omissions alleged in this Complaint.

## **FACTUAL ALLEGATIONS**

### **PRIOR TO THE SEIZURE OF THE CHILDREN MD AND JN  ON SEPTEMBER 11, 2019**

13.  TIFFANY is married to JOHN who had a daughter from a previous marriage  named **CD,** who at the time of the incident was 14 years old. CD is a problem child who was abusive to TIFFANY and other family members. In or about March 4, 2019, TIFFANY called the Sheriff because she was

attacked by CD for no reason. On March 5, 2019, Texas Department of Family and Protective Services (herein after known as "TDFPS") investigated the altercation. TDFPS investigator CHARLES CAROLL in his affidavit stated "CD stated she scratched TIFFANY (Ms. Bissell)  because she did not want to be disciplined. CD stated she hit her step-mother, TIFFANY, three times which resulted in TIFFANY holding CD down and putting her hand on CD's face. TIFFANY did this  to defend herself from the assault by CD. CD then bit TIFFANY's hand." "CD was observed with a scratch over her right eye and a bruise on her left chin area." TIFFANY's hand where CD had bitten her was observed with dried blood." TDFPS told TIFFANY she had to do services even though TIFFANY was assaulted by CD and had only defended herself against CD. At No time did this altercation or allegation involve the safety or concern of MD and JN. **Even though this troublesome disrespectful child, CD, assaulted her step-mother, TIFFANY, TDFPS insisted that TIFFANY take family services for no legitimate reason. TDFPS in this case sided with the child CD, even though CD is a violent individual. There was absolutely no logical reason for TIFFANY to require family services when CD was the aggressor and which was known by TDFPS.**

14. On April 24, 2019, CD was removed by TDFPS because TIFFANY as care-giver "Refused to Assume Parental Responsibility." for CD because CD was a dangerous child. During family services CD still exhibited violent behavior and was increasingly unruly. Still TDFPS told TIFFANY that TIFFANY and her husband **could not discipline** CD despite the violent and aggressive nature of the child, CD, actually putting  TIFFANY at "substantial risk of bodily harm" because  the child CD is violent and unpredictable. Despite the aggressive behavior of CD, TDFPS still insisted that TIFFANY continue family services. TIFFANY refused because of the violent and aggressive nature of CD. CD was removed by TDFPS **without** court order and **without** the approval of JOHN. John still wanted his daughter back in the home and was actually trying to reunify.

15. At the start of the TDFPS case with CD, TDFPS conservator case worker **ELAINE MATA** (herein after known as ELAINE) was assigned over CD's case and only over CD as TDFPS did not

have temporary managing conservatorship of JN and MD nor were any court ordered service ordered with respect to  JN and MD.  **JOHN and TIFFANY had made numerous complaints against ELAINE to ELAINE's Supervisors and to the OFFICE OF CONSUMER OFFAIRS because ELAINE allowed  the child to go to fictive kin, lied about contact with CD before the adversarial hearing and refused to allow CD  to be placed with biological family members ready and willing to take CD who would pass all requirements. By placing CD with a fictive kin, ELAINE made reunification impossible. This shows the incompetence and malicious actions of ELAINE as an employee of TDFPS.**

**16.  JN and MD continued to live with TIFFANY during this time where there were no concerns. CD ultimately went to live with fictive kin BRITTANI BAKER with the approval of JOHN and the Court. As of today, CD maintains no contact with the family  because JOHN has no interest to continue the parent-child relationship with CD due to her violent, aggressive, and dangerous hostility to the family. JOHN finally realized the problems that this child could cause. CD had alleged child abuse on more than one occasion and would tell her teachers to get JOHN and TIFFANY  in trouble. CD had prior history of this. CD's therapist noted concerns for sociopathic behavior. All of CD's therapy notes were forwarded to TDFPS which put TDFPS <u>on notice that CD was a dangerous problem</u>. <u>In view of all this, it is troubling that TDFPS actually supported and sided with the violent child, CD, even though CD posed  a potential serious threat of  bodily harm  to TIFFANY and JOHN.  This shows the incompetence of TDFPS staff who appear not to be able to have the ability to make proper decisions.</u> CD  one year earlier sexually assaulted TIFFANY'S seven (7) year old niece when CD was  13. CD touched the seven (7) year old's  private areas with her clothes on and forced her to make out. TDFPS knew this and did nothing but still sided with CD and against TIFFANY.**

6

**FACTUAL CIRCUMSTANCES OF ALLEGED DOMESTIC VIOLENCE, FALSE REPORTING OF CRIME FROM ANGRY SPOUSE TO EFFECT DIVORCE PROCEEDINGS**

17.     From April, 24,2019 and until on or about August 18, 2019 JOHN did not live-in same residence as TIFFANY, MD, and JN since JOHN was employed as an overseas contractor in Erbil, Iraq.  JOHN came home briefly and was supposed to return to Erbil, Iraq on September 15, 2019 as he was on only on Rest and Recuperation. On or about Aug 21,2019 TIFFANY Temporarily moved out of the family home until JOHN was to return to Erbil, Iraq since  TIFFANY was strongly considering a divorce JOHN. TIFFANY did not want JN or MD to be effected emotionally over a possible divorce and potential arguments that could occur.  In or about August  20, 2019, TIFFANY, JN, and MD moved into the home of the Children's Godparent's CHRISTINA WILKINS (herein after CHRISTINA). During this time visits between JN and MD would be conducted by JOHN picking them up and dropping them back off to TIFFANY at CHRISTINA'S which visits went well.

18. On August 27, 2019 JOHN discovered that when TIFFANY gathered personal items for herself as well as for  JN and MD for the temporary move,  TIFFANY had taken community property funds  to take care of JN and MD. John, out of anger and not happy about the possible divorce,  called the sheriff to see what could be done. He was informed to talk to an attorney and at that point made false allegations that a physical allegation may have taken place. Both JN and MD were not present and at no point on that date did TIFFANY even have any in-person conversation with JOHN. JOHN was trying to paint a picture to have an advantage  in court if the divorced proceeded. No charges were filed and DEPUTY BURGAN stated he did not believe John was being truthful. TIFFANY did not know about this incident until a few days later. TIFFANY did provide to DEPUTY BURGAN exchanged TEXT messages between JOHN to prove during the alleged time and date of the alleged incident she was nowhere around JOHN.

19. On August 29, 2019 on or about 7 pm JOHN picked TIFFANY up from CHRISTINA'S

house. JOHN stated he wanted to discuss things with TIFFANY in regards to the possible divorce. JOHN wanted to work on the marriage and TIFFANY did not at this time. This led to a verbal disagreement.  TIFFANY asked to be brough back to CHRISTINA'S house where the children JN and MD were, on or about 7:30 pm and was brought back.

20. On August 29, 2019 on around about 8:15 pm TIFFANY and CHRISTINA headed to  Killeen, Texas to pick up another friend PATRICIA ROBBINS (herein after PATRICIA) to go the Hallmark Plaza bingo hall in Killeen, Texas. TIFFANY, CHRISTINA AND PATRICIA arrived at the hall around 8:40 pm and stayed until at around 1:20 am on AUGUST 30, 2019. TIFFANY and CHRISTINA then dropped off  PATRICIA at her residence in Killeen, Texas.

21. On August 30, 2019 on or about 1:35 am TIFFANY received numerous phone calls from NATALIE BERMEA (herein after NATALIE) a family friend who had been staying with TIFFANY and JOHN in the family residence with her 2 children before Tiffany moved out temporarily and after TIFFANY temporarily moved out. Upon answering, Natalie told Tiffany that JOHN was up to something since he was calling the sheriff. since  JOHN was angry over the possible divorce and that TIFFANY drove the family vehicle. Approximately 10 minutes later on or around 1:45am NATALIE called TIFFANY back and said TIFFANY needed to get to the house now because JOHN suddenly had an injury on his face and she could hear he was on the phone with the sheriff. TIFFANY proceeded home from Killeen with CHRISTINA. At 2 a.m.,  TIFFANY could see that there was in-fact a deputy sheriff at the residence.

22. TIFFANY dropped off CHRISTINA, who lives less than a mile up the street and headed to the family residence and then greeted DEPUTY VASQUEZ. DEPUTY VASQUEZ told TIFFANY the reason for the call was that JOHN was claiming TIFFANY had back-handed him. DEPUTY VASQUEZ interviewed everyone separately including NATALIE who was at the home. TIFFANY told DEPUTY VASQUEZ that she had **not** been living in the home nor had TIFFANY even seen

JOHN for the last several hours and that DEPUTY VASQUEZ could verify through the business cameras at the bingo hall in Killeen that she was with CHRISTINA. DEPUTY VASQUEZ verified with CHRISTINA where JN and MD were. DEPUTY VASQUEZ then interviewed NATALIE and her two (2) children who were on the couch. DEPUTY VASQUEZ verified that TIFFANY HAD NOT been seen since around 7:30 pm and at that time JOHN had no injury. NATALIE also told DEPUTY VASQUEZ that at 1:30 am JOHN did not have any Injury. DEPUTY VASQUEZ confronted JOHN with the conflicting information and said JOHN's story " did not add up" and that if JOHN is found to be falsifying a crime there would be criminal consequences. AT that time JOHN broke down and recants his statements that TIFFANY DID NOT backhand him, and John had in fact "self-injured himself". JOHN told DEPUTY VASQUEZ he was stressed and was told by TIFFANY she was planning on keeping the children. JOHN was advised by an attorney it would be hard to get custody of MD from TIFFANY unless she was deemed unfit. DEPUTY VASQUEZ noted there were no injuries to TIFFANY's face.

### THE BEGINING OF A SHAM INVESTIGATON BASED ON A FABRICATED ALLEGATION BY JOHN DUMDIE BY ELAINE MATA WHO KNEW THE ALLEGATION WAS FALSE

23. ON AUGUST 30, 2019 on or about 11 am TDFPS ELAINE MATA, LATICIA BURELL and CASA DENISE HANLEY showed up for a "home visit" in regards to CD. The home visit usually just consists of a walk around the home. No concerns about the home were noted by TDFPS and CASA. ELAINE observed MD "free running around with NO CONCERNS". Afterwards TDFPS wanted JOHN to let CD stay with her fictive kin and not litigate it any further. **At this point the conversation moved to TDFPS and CASA becoming accusatory towards JOHN and TIFFANY**. TDFPS was only there to conduct a "home visit" not a meeting and TIFFANY advised any questions needed to take

place in front of JOHN'S attorney. The "home visit" ended after about 30 minutes because of the disruptive nature and accusatory questions aimed at TIFFANY and JOHN in front of MD. At this Point TIFFANY affirmatively told them to leave the home. **ELAINE MATA was furious.**

24. On August 30, 2019 after the "home visit" ended. ELAINE who is not and had never been an TDFPS investigator maliciously intended to further investigate and find any evidence in order for TDFPS to conduct a full investigation. ELAINE made an inquiry on TIFFANY to the CORYELL COUNTY SHERIFF's office even though TIFFANY was not under any investigation for child abuse nor had one been commenced.  Per TDFPS policy and state law an investigation does not start until a complaint is receive to the State- Wide Intake.   At this time, ELAINE using her scope of employment within TDFPS was able to obtain a copy of a call for service or dispatch report on the earlier AUGUST 30, 2019 incident at 1:30 a.m.- 2:00 a.m.  in the morning  (this was a CALL FOR SERVICE, NOT a list of a CRIME or A CRIME REPORT). These Calls are titled as they are called in and dispatched. For example, a call may be dispatched as "murder" as called in by a citizen, but later the officer finds it to be a "death of natural causes" This would be listed still in the call for service report as "murder." A call for service at best does not indicate any reliability and may be false with errors.  A reasonable social worker such as ELAINE who at various times works hand and hand with law enforcement would know that a call for service lacks reliable factual details.  Additionally,  the fact the stated call for service was filed as an "information only" report only would be enough information that a reasonable person could conclude a crime did not occur. **<u>Even more unreasonable and concerning is that ELAINE took this non-incident and intentionally and with malice further added facts that never occurred in order to open a TDFPS investigation to seize her children.</u>**

25. ELAINE, a mandated reporter, after leaving the home on August 30, 2019 and **without** any proof of alleged child neglect and rather than reporting the alleged suspected neglect within the required 48 hrs. Instead on SEPTEMBER 3, 2019 called the state wide intake to report Child Neglect. **ELAINE**

**intentionally and maliciously took the written "call for service" and reworded, omitted, obfuscated, and added false facts to what had actually happened with the call made by John Dumdie. what actually occurred. ELAINE falsely insinuated that TIFFANY was an aggressor in a domestic violence incident which never occurred based on the call to the sheriff which was fully investigated by Officer Vazquez as a false report by John Dumdie. ELAINE falsely told s the state wide intake that TIFFANY slapped JOHN DUMDIE with the back of her hand while JOHN DUMDIE was driving and at a later time TIFFANY punched JOHN DUMBIE in the face and that JOHN DUMDIE had visible injuries on his face from the domestic violence. Per TDFPS domestic violence guidelines, the only time domestic violence is considered child abuse or neglect is if it is within CLOSE PROXIMITY OF A CHILD. Elaine knew this through her TFDPS employment. ELAINE also knew through the knowledge of her employment of TDFPS, that reports that lack detail or is questionable in some way are not forwarded for investigation. However, ELAINE maliciously added that the where about of MD wase unknown in order to make the complaint related to child abuse.**

26. ELAINE also knew through the scope of knowledge through her TDFPS employment that law enforcement who are also mandated reporters would have been in fact been required by law to file their own child abuse or neglect if any child had been present to witness domestic violence within 48 hrs. However, 4 days later when ELAINE called the state wide intake, no report was ever filed by the Sheriff. ELAINE with the assistance of TDFPS investigator DANIELLE CLARRIDGE intentionally created a FALSE investigation.

## THE START OF THE JUDICIAL DECEPTION AND FALSE INVESTIGATION

27. On SEPTEMBER 4, 2019 Investigator DANIELLE interviewed ELAINE. Per DANIELLE'S affidavit, ELAINE told DANIELLE that TIFFANY during the "home visit" on AUGUST 30, 2019 had an injury to the right side of her face which was bruised". TIFFANY simply had a pimple on her chin

caused by an infected insect bite. ELAINE knew this to be false and used this in an attempt to further influence and skew the results of the TDFPS investigation. However, TIFFANY has time stamped photos of her face on this date without any injury or bruising as well as an AUGUST 30, 2019 note from her doctor pertaining to the insect bite.  ELAINE knew that Deputy Vasquez stated hours before that TIFFANY did not have any injuries as ELAINE claimed.

28. On September 5, 2019 both JOHN and TIFFANY willfully cooperate and come in for interviews at the Copperas Cove TDFPS office. TIFFANY told DANIELLE she did not hit her husband. Investigator DANIELLE wanted to know how JOHN got an injury. TIFFANY told Investigator DANIELLE she was not at the house John was living at, had not been living there for a while, and did not know how JOHN  injured himself . She was told, however, that JOHN had been doing yard work earlier and may have been injured accidently by a weed -whacker.  TIFFANY was never present during the interview with JOHN. Investigator asked TIFFANY to speak to the children. TIFFANY told investigator DANIELLE that until OFFICER VASQUEZ verifies that domestic violence occurred in front of JN or MD, that the department is prohibited from doing so as this was a false allegation made by TDFPS themselves. TIFFANY believed JN and MD were not well-served if they were subjected to an investigation based on a false allegation and could be traumatized.

29. Also, on September 5, 2019 Investigator DANIELLE interviewed JOHN who also voluntarily came into TDFPS to provide a statement. JOHN told DANIELLE that he -injured himself and that both JN and MD were not present out of fear that TIFFANY would be able to gain custody of them during the divorce.

30. Additionally, on September 5, 2019 Investigator DANIELLE interviewed DEPUTY BURGAN who stated to Investigator Danielle that he did not even know children lived at the residence and that no children were mentioned by JOHN nor seen by DEPUTY BURGAN. DEPUTY BURGAN also  told Investigator DANIELLE  that he was unable to speak to TIFFANY regarding the incident as

TIFFANY  was said to be in Killeen. **DEPUTY BURGAN did state to investigator DANIELLE that he did not feel JOHN was being truthful.**

31. On September 5, 2019 Investigator DANIELLE noted in her affidavit "investigator attempted to speak Officer Vasquez, Coryell County Sherriff's office, who responded to another domestic incident on August  30, 2019. This attempt was unsuccessful, but the <u>police report</u> was received noting Mr. Dumdie called law enforcement due to being backhanded while driving" (verbatim). However, there was no police report, only a call for service. During testimony at the hearing Investigator DANIELLE admitted during testimony on FEBRURAY 19, 2019 that she was aware that a "call for service" is not a police report, that there is falsity to the report, and that the initial call will always state the intake of the call initially even if it turned out to be true or not. DANIELLE also noted some discrepancies that showed a remarkable difference between what ELAINE reported to state wide intake and what actually said on the "call for service". At this time  DANIELLE could reasonably formulate the allegation was untrue.

32. On September 6, 2019 JOHN and TIFFANY cooperated with TDFPS and agreed to let MD be interviewed and seen by TDFPS DANIELLE as he was the only subject child and JN was not mentioned in the allegation. Investigator DANIELLE interviewed  and observed MD. MD was 3 years old with a speech delay and could barely talk, he had a fine motor delay from his brain to his tongue and was being treated by a speech pathologist. This was also confirmed by TDFPS own contracted psychologist 6 months later. JOHN bought MD to the Copperas Cove, TDFPS office at approximately 10:44 am. Investigator Danielle was able to freely observe MD. who had no evidence of abuse or neglect. Investigator DANIELLE even took a picture of MD. The Investigator asked JOHN if TIFFANY had given permission for MD to be brought in and JOHN stated "yes". Investigator DANIELLE refused to interview MD, even though she had every opportunity to do so, citing previous denials from TIFFANY but knew TIFFANY'S phone number and did not even  try to verify the status

change or have JOHN call TIFFANY to verify the status change. In summary,  TIFFANY was aware and was agreeable for MD to be interviewed and viewed. However, Danielle did not interview MD but did take a picture of MD. The reason was prior refusals by TIFFANY but now TIFFANY and JOHN would allow the interview but DANIELLE refused to interview the child. So obviously, DANIELLE was not concerned about MD being in danger.

33.    On September 6, 2019 Investigator DANIELLE interviewed DEPUTY VASQUEZ who told Investigator DANIELLE that TIFFANY was viewed without injury and that this was not a domestic violence incident and at no point in time did an argument turn into a physical altercation. DEPUTY VASQUEZ told investigator DANIELLE he warned JOHN about the legal consequences of filing a false police report and That JOHN had in fact self-injured himself and made a false allegation. DEPUTY VASQUEZ stated he confirmed with a family friend JN and MD whereabouts who were with a family friend. DEPUTY VASQUEZ said based on the witnesses and evidence he had no reason to believe TIFFANY was being untruthful. DEPUTY VASQUEZ stated that the only children seen were NATALIES two (2) children since they are black while TIFFANY'S children are white. Investigator DANIELLE obfuscated and intentionally skewed this information from her affidavit to make it appear  that the two (2) children present where in fact JN and MD. To date there was no investigation on NATALIES two (2)  children who are black nor was any investigation done to the safety of those children who continued to live in the same household as TIFFANY.

34. On September 6, 2019, even after, Investigator DANIELLE had statements from credible witnesses from law enforcement that completely refuted the allegation stating domestic violence DID NOT occur and the children were not present. She was able to see the subject child MD and took a picture of MD with no evidence of abuse or neglect,  interviewed JOHN and TIFFANY who also stated no domestic violence occurred,  and that MD and JN has never witnessed domestic violence since it never occurred. TDFPS ELANE had been to the home hours after alleged incent occurred and

the home showed no evidence of a violent altercation or that the home had any safety concerns whatsoever. Any reasonable person at this point would concur that this was a false allegation of child neglect, However, investigator DANIELLE still proceeded to do an *ex-parte* hearing in order to obtain an aid to investigate because Investigator DANIELLE wanted to continue with the sham investigation and harass TIFFANY and JOHN and cause undue stress and or harm to JN and MD.

35. On September 6, 2019 using *ex-parte* aid to investigate, Investigator DANIELLE proceeds to take the non-subject child JN out of class to interview her. JN was viewed free with no injuries. JN told investigator DANIELLE she has never seen physical violence within the home. JN was asked if she felt safe within the home and JN being almost 12 years old stated she did feel safe in the home. Per TDFPS policy if the court grants a court order in aid of an investigation, the caseworker MUST ensure the parent is given notice of the order (in its entirety) at the time the order is carried out. This is a mandatory function, not discretionary. Investigator DANIELLE failed to notify TIFFANY that she was carrying out a court order aid to investigate nor did she give TIFFANY notice that one even existed when she pulled JN out of class.

36. . On September 6, 2019 Investigator DANIELLE showed up at JOHN and TIFFANY'S residence after interviewing JN.  Per Investigator DANIELLE'S affidavit "Investigator DANIELLE informed Mr. Dumdie that the aid was for the purpose of the Department to interview JN and MD in a private setting and view the home were the children stay." This is quite daunting given the fact the allegation did not involve the home and the TDFPS had been in the home 1 week earlier and hours after the alleged incident. Even more concerning is Investigator DANIELLE wanted AGAIN to Interview and access JN and MD. Investigator DANIELLE handed TIFFANY and JOHN ONLY HALF of the *ex-parte* court order aid to investigate. TIFFANY told investigator DANIELLE you have all the information you need. TIFFANY was irate that Investigator DANIELLE wanted to continue to infringe on JN, MD, and her privacy and not so kindly asked her to leave as TIFFANY considered this

harassment. Investigator DANIELLE did not tell TIFFANY that if she did not comply that TDFPS would remove JN and MD. TIFFANY specifically asked if TDFPS were trying to remove her children, Investigator DANNIELLE stated NO.

37. On Saturday September 7,2019 JOHN was able to get into touch with investigator DANIELLE. JOHN explained that this is "thoroughly ridiculous" as the deputy sheriff said no domestic violence occurred  and the children were not present during the divorce disputes. Investigator DANIELLE told JOHN there had been no cooperation with the investigation. JOHN told investigator DANIELLE everyone had cooperated and not a single person has said domestic violence occurred or in front of JN and MD. JOHN asked investigator DANIELLE to forward a full copy of the "Aid to Investigate" to his attorney on file so that both JOHN and TIFFANY could get legal advice. Investigator DANIELLE said she would make note of his request to speak to his attorney.

## THE JUDICIAL DECEPTION FROM DANIELLE COLLABORATED WITH BRITTANY AND FELISHA

38. On September 9,2019 instead of forwarding the entire **"Aid to Investigate"** to JOHN or TIFFANY'S attorney on file, Investigator DANIELLE interviewed credible law enforcement witnesses DEPUTY VASQUEZ and DEPUTY BURGON, JOHN, TIFFANY, JN, and observed MD. All of the witnesses refuted the allegations of domestic violence and stated both JN and MD were not present anyway. Any reasonable investigator would believe that ELAINE'S allegation of child neglect and domestic violence lacked any factual foundation. In fact, there was not a single shred of evidence that supported ELAINE'S allegations but still, Investigator DANIELLE filed an *ex-parte* suit for order of protection of JN and MD, that contained **knowingly false allegation of child abuse and neglect and presented it as facts.** DANIELLE  lied and stated she was unable to fully investigate the allegation. Investigator DANIELLE lied in her affidavit and said JN and MD were in danger. The "mere possibility" of abuse or neglect is not enough to meet the standard that the children were in

danger of immediate harm. There was absolutely no evidence of danger to JN or MD. Both JN and MD were both viewed to free of any abuse and neglect. Not a single reasonable effort was made to keep JN and MD home. Not one and  there was no safety plan and  no forwarding of an aid to investigate to the attorney on file. There was no removing of the alleged perpetrator.  JOHN was fully cooperative and was not the alleged preparator.(per TDFPS policy, TDFPS must file a petition to remove the alleged perpetrator from the child's safety, rather than attempt to remove the child.) There was no warning that if TIFFANY did not let TDFPS into the home "AGAIN" and let TDFPS access JN and MD "AGAIN" that JN and MD were going to be removed. On **September 9, 2019** Investigator DANIELLE petitioned the Court for an *ex-parte* emergency removal. This affidavit submitted by investigator DANIELLE failed to include required certified contents that a social worker must submit when petitioning for an emergency removal, these included**: 1. That there is an immediate danger to the physical health and safety of the child or the child has been a victim of neglect or sexual abuse; (that again investigator DANIELLE never swore to or certified)  and 2. That there is no time, consistent with the physical health and safety of the child, for a full adversary hearing; ( that again investigator never swore to or certified.) The Order was signed by associate JUDGE MABRY on SEPTEMBER 9, 2019 giving TDFPS temporary managing conservatorship of JN and MD.**

     39.  ON SEPTEMBER 11, 2019 at or around 4:00pm TDFPS removed MD and JN, A full two (2) days after TDFPS obtained Temporary Managing Conservator of MD and JN. A full 2 days JN and MD stayed in the possession of JOHN and TIFFANY. TIFFANY asked DANIELLE why JN AND MD were being removed, **DANIELLE's response was for failing to aid the investigation**. JOHN and TIFFANY were given notice of hearing would take place on September 16, 2019 at  9:00 am less than a full five days' notice.

40. On September 12, TIFFANY contacted **TDFPS SUPERVISOR BRITTANY** to discuss the false facts created by ELAINE and DANIELLE. and that  this was a false allegation and  the children needed to be returned immediately and TDFPS knew this to be true. That this had everything to do with the violent child CD case, TIFFANY stated FAILING TO AID AN INVESTIGATION is not a reason to remove JN and MD. TIFFANY made BRITTNEY aware of TDFPS own policy of domestic violence  that domestic violence in itself is not child abuse UNLESS ITS WITHIN CLOSE PROXIMITY OF A CHILD,  let alone it did not occur. BRITTNEY told TIFFANY she was in agreement for the removal and it was a collaborative effort. TIFFANY then asked for BRITTNEY'S supervisor contact information.

41.  On September 15, 2019 John who is a D.O.D contractor left for Erbil, IRAQ. In which TDFPS were well aware in advance before the "home visit" that he had to return due to his contract. Yet TDFPS was so concerned about domestic violence that would  continue to take place knowing the husband returned to IRAQ pursuant to his contract. Any reasonable person could conclude that domestic violence will not be "likely" to occur when one spouse is living in another country. Before leaving JOHN told TDFPS that he was more than willingly to quit on the spot if TDFPS would return MD to his possession. JOHN at this point had to go back until the government could find him a replacement as he was expected to stay another year and did not want to lose his good graces as a D.O.D contractor.

42.  On September 16, 2019 the "order of protection hearing" had to be continued 4 days as there was not enough time to retain legal counsel to review the case with.

43.   On September 27, 2019 a notice of findings of CPS investigations was sent from TDFPS. In regards  to the alleged domestic violence and neglectful supervision of JN and MD, the finding was deemed unable to determine. ELAINE and DANIELLE asserted that both JN and MD were in

immediate danger because of domestic violence, yet TDFPS were unable to determine if it even occurred.

44. . On OCTOBER 2, 2019 at 9:00 am the rescheduled hearing took place. JN and MD case was not heard until 4:30 pm. During that the time the only real testimony was DEPUTY VASQUEZ and DEPUTY BURGAN. Both DEPUTYS testified that domestic violence did not happen and both JN and MD where not present during the alleged incidents. Due to the time, the hearing once again had to be rescheduled. It was expected to take place on OCTOBER 30, 2019. At the end of the hearing JN was placed with SHELDON on a "visit." even though SHELDON had no contact with JN for over seven (7) years before this placement. **SHELDON is JD's biological father and JD was placed with SHELDON because SHELDON was considered the " non-offending parent" but by all accounts, so was JOHN yet MD was not returned to him. The only alleged preparator was TIFFANY who did nothing wrong and the defendants knew.**

45. ON OCTOBER 11, TIFFANY was finally able to get into touch with **FELISHA TDFPS REGIONAL SUPERVISOR** before a full hearing for removal had taken place. FELISHA agreed to review the case. During this time TIFFANY sent FELISHA the call for service, the facts that ELAINE had altered and omitted, the half of the aid to investigate given to TIFFANY by DANIELLE, the notice of findings. and the false statements ELAINE stated about bruising to TIFFANY's face, TIFFANY also sent time stamped photos of her face from August 30, 2019 that was merely just a pimple without bruising and the doctors diagnosis of the infection from DARNELL ARMY URGENT care on that same date of August 30, 2019, and time stamped text messages from TIFFANY and JOHN proving TIFFANY and JOHN were not even around each other on the date of altercations. TIFFANY also told FELISHA that the DEPUTY'S had testified in Court earlier and that there was no domestic violence. TIFFANY gave her contact information to all witnesses including DEPUTY BURGON, DEPUTY VASQUEZ, NATALIE, CHRISTINA and PATRICIA. AT this point any reasonable person

including FELISHA could concur that this was a false allegation. **FELISHA was well aware of the sham investigation well aware of every single shred of evidence that pointed out both JN and MD were not in close proximity to any alleged domestic violence altercation but still supported and approved the removal of the children by her subordinates BRITTNEY and DANIELLE for domestic violence which never occurred. FELISHA approved the initial removal and the continued removal of the children from TIFFANY for no lawful reason.**

46.  On OCTOBER 17, 2019 JOHN officially resigned his job as an overseas D.O.D contractor to return to the U.S. and get MD back.

47.  On OCTOBER 22, 2019 TDFPS filed an amended petition that added SHELDON as a party and included claims to terminate his parental rights as the of father of JN.

48. On OCTOBER 30, 2019 the continued hearing took place. For five ( 5 )  hours TIFFANY was character assassinated on events unrelated to JN and MD. The most common theme was the events of CD that had happened seven (7) months prior, During testimony DANIELLE continued with the charade of this being a domestic violence incident knowing well it was not, admits to taking the children for failing to aid the investigation because she could not determine if JN or MD were safe. She also admitted  that CD's case did not involve JN or MD. Throughout the entire hearing investigator referred to the incident as domestic violence, which was a lie. The truth is these incidents were false reporting of crimes that did not even occur.  When JUDGE MABRY asked DANIELLE that basically  you have two parents, one stating domestic violence did happen and the other is stating it did not happen.  DANIELLE lied and said "and…. you have two different stories as to how the injuries occurred. At no point did Either JOHN or TIFFANY ever say that domestic violence occurred. In fact, the evidence and investigation by the Sheriff's department already proved that. With the consent of the supervisors, the defendants kept "pushing the narrative of domestic violence that never occurred" even though evidence was to the contrary. Defendants lied at all court hearings and created the sicario that

CD was now beaten by TIFFANY even though the defendants knew that CD was a dangerous problem child.

49.  On or about NOVEMBER 4, 2019 TIFFANY filed a request for a DE NOVO hearing. This hearing should have taken place within 30 days.

50.  On FEBURARY 6, 2020. The first half of the DE NOVO hearing took place. Before this hearing ELAINE had been removed as conservator due to the intentional altering of TIFFANYS drug tests when TIFFANY does not use illegal drugs. ELAINE would send TIFFANY to a specific drug testing place on a specific day, who did not test TDFPS clients, TIFFANY would give timestamps signed by the facility that TIFFANY went there when required and gave this information to ELAINE, yet ELAINE would put down missed- considered positive. ELAINE took the stand and admitted to being the reporter. ELAINE admitted to getting her information off the "call for service" ELAINE testified that MD or JN were not safe with TIFFANY or JOHN.  ELAINE testified TIFFANY had been kicked out of parenting, when ELAINE maliciously had TIFFANY removed from PARENTING. ELAINE **was maliciously trying to set it up to where ELAINE could actually terminate the parental rights of TIFFANY.**  ELAINE testified she was not aware of TIFFANY completing another parenting class. ELAINE lied and said that both JN and MD had told her they witnessed domestic violence. ELAINE testified that a psychological examination said TIFFANY would not be a good independent parental resource to JN and MD. This was another lie. TIFFANY'S psychological evaluation did not involve JN or MD. The hearing ended with DANIELLE on the stand insinuating that JN said there was fighting in the home and it was normal. This seemed to leave an impact on the JUDGE FARELL replied "what she said it was normal?! Again, it had to be continued do to time restraints.

51.  On FEBURARY 19, 2020 the second half of the D ENOVO hearing took place. During testimony DANEILLE resumed testimony on what JN said. DANIELLE said JN said there was no

fighting with hands only words. DANIELLE admitted she aware that there is falsity to the "call for service report" DANIELLE testified the only Reasonable effort she made to prevent the need for removal was the aid to investigate. DANIELLE testified that it was a collaborative effort to remove the children from her supervisors and up and not just based on her decision. Investigator DANIELLE continuously referred to the false reporting of crime as a domestic violence incident.  DANIELLE testified that DEPUTY VASQUEZ told her there was no domestic violence. DANIELLE testified that DEPUTY BURGAN told her there was no domestic violence. DANIELLE testified JOHN and TIFFANY stated there was no domestic violence. DANIELLE testified that she was able to interview JN who said no domestic violence. DANIELLE testified that she was able to see MD and that JOHN did bring him into the office and that DANIELLE never verified with TIFFANY of the status change. DANIELLE then lies and says she was unable to complete her investigation at the time and unable to determine if JN or MD were safe. As usual at all hearings the defendants continually lied and pushed a false narrative of domestic violence in violations of TIFFANY's constitutional rights.  **Temporary Managing Conservatorship** was granted to TDFPS

52. On MARCH 4, 2020 A Permanency Hearing took place a mere two (2) weeks after ELAINE testified that MD and JN were unsafe with TIFFANY, MD was placed back into the home of JOHN and TIFFANY on monitored return based off the recommendation of the new TDFPS conservatorship caseworker JACINDA MOUTON. JN was also ordered to have one (1)-month unsupervised visit with TIFFANY and the  ENTIRE summer with unsupervised visits. These visits went well without any issues or concerns whatsoever. **The impact on MD was shocking. MD was in five (5) different foster homes in six (6) months and as a result of the outrageous conduct of the defendants regressed and also attempted to self -injure himself multiple times and was diagnosed has having an adjustment disorder by TDFPS own contracted psychiatrist as a result of the conduct of the defendants.**

53. On July 27, 2020 there was a court ordered mediation over JN and MD. MD was officially returned to JOHN and TIFFANY and TDFPS no longer had Temporary Managing Conservatorship (TMC) of MD but continued TMC of JN where JN was still on a "visit" with TIFFANY as JN had been since MAY 29, 2019 with no concerns. TDFPS contracted family therapist also recommended JN be returned to TIFFANY. JN actively voiced to the Judge, TDFPS, and JN's ad-litem that she wanted to be returned to her mother TIFFANY. At this point there was no need for any protection of any child, yet TDFPS still maintained TMC over JN and refused to drop the case.

54. . On AUGUST 25, 2020 the TDFPS nonsuited their claims against JOHN, SHELDON, and TIFFANY.  On AUGUST 26, 2020 The Court granted the order of non-suit and dismissed the case. On AUGUST 27, 2020 TIFFANY pursued to obtain custody of JN as the final divorce decree gave primary custody to TIFFANY.

**55.  As stated above BRITTANY HEMINGWAY was the supervisor and FELISHA RODRIGUEZ was the Regional Supervisor who knew all the facts of this case and knew TIFFANY did nothing wrong but still approved and directed the activities of ELAINE MATA and DANIELLE CLARIDGE who were  involved in this case and also supported the removal of the children from TIFFANY even though both supervisors knew there was no domestic violence.**

**Plaintiff brings forth the following counts and allegations supporting Plaintiff's causes of action:**

**<u>Count 1-Violation and Deprivation of The right to family Integrity</u>**

**<u>Under the Fourteenth Amendment</u>**

**(Against ALL Defendants and DOES 1 through 10, inclusive)**

**56.**  Plaintiff re-alleges, and incorporates herein as if set forth in full, all of the preceding Paragraphs 1-55 above as though fully plead herein.

57. The U.S. Supreme Court has repeatedly held that parents have a fundamental right to make decisions as to the companionship, care, and custody and management of their children, which right is a protected liberty interest under the due process clause of the Fourteenth Amendment. *Troxel v. Granville*, 530 U.S 57, 65-66, 120 S.Ct 2054,2060(2000). The Federal constitution protects the right to "family integrity," which is characterized by the due process clause of the of the Fourteenth Amendment, including the "rights to conceive and to raise one's children" and to maintain the integrity of the family unit" *Morris v. Dearborne*, 181 F.3d (5th Cir. 1999) (quoting *Stanley v. Illinois,* U.S. 645, 651 (1972) This right can also be described as "the right of the family to remain together without the coercive interference of the awesome power of the state. *Hodorowski v. Ray*, 844  F.2d 1210, 1216(5th Cir. 1988)

58.   ELAINE, DANIELLE, BRITTANY, and FELISHA, acting under the color of the law deprived plaintiff's rights to family integrity, her right to raise one's children, and the right to maintain the integrity of the family unit when DANIELLE with the assistance of BRITTANY, FELISHA, and JAIME took away JN and MD based of a knowingly false allegation of child neglect that was falsely created by ELAINE in order to conduct a false (sham) investigation and to deceive the Court.


**Count 2 -Violation and Deprivation of PROCEDURAL DUE PROCESS**

**Under the Fourteenth Amendment**

**(Against ALL Defendants and DOES 1 through 10, inclusive)**

59. Plaintiff re-alleges, and incorporates herein as if set forth in full, all of the preceding Paragraphs 1-58 above as though fully plead herein.

 60.  Under the Fourteenth is the right to procedural due process is implicated where a constitutional liberty or property interest is concerned. As a result, there can be no doubt that the Fourteenth Amendment is implicated whenever the government seeks to separate a parent from his or

her child and due-process principles generally require the right to notice and a hearing *before* children are separated from their parents. *See Santosky v. Kramer*, 455 U.S. 745, 753-54 (1982). Plaintiff's Fourteenth Amendment was violated when defendants deprived her notice and a hearing before JN and MD were removed.

61. There was adequate time for the defendants **to give notice and hearing** before JN and MD were removed. The facts are this was not an immediate emergency where the children were in danger of immediate harm.  Proper notice is the right to notice and a hearing which plaintiff was deprived of. There was **no** evidence of abuse or neglect to JN or MD. Not a single shred of evidence existed.

62.  Per DANIELLE'S affidavit "Without the ability to properly investigate these allegations, the children in the residence are potentially at risk of harm or neglect." A mere suspicion  of harm does not negate due process to plaintiff and the right to a notice and hearing before JN and MD removed.

63. The fact that the circumstances of JN and MD had not changed since AUGUST 30, 2019 when neglect was allegedly "suspected" through the time of removal date of September 11, 2019. This shows that if TDFPS was able to wait 13 days without any circumstances to changing in regards to JN and MD that they could wait until a hearing and afforded plaintiff due process of the law. EVEN MORE damaging is that the Judge signed an order of removal on SEPTEMBER 9, 2019, yet JN and MD were not removed until a full two days later, SEPEMBER 13, 2019. This alone is enough to satisfy that JN and MD were not in immediate danger and plaintiff's Due Process under the Fourteenth Amendment should not have been deprived by the defendants.

64. At the adversary hearings both ELAINE and DANIELLE lied at the hearing and the children remained with TDFPS. Both ELAINE and DANIELLE with the approval of BRITTANY and FELISHA testified on their ongoing charade of this false allegation of child neglect and stating domestic violence happened within the close proximity of children which never occurred. "A conviction obtained through the use of false evidence, known to be such by representatives of the state,

must fall under the Fourteenth Amendment." Napue v. Illinois, 360 U.S 264,269 (1959). Investigator Danielle who knew the allegations to be false continued with lies that she was unable to determine and then would directly contradict herself by referring to the alleged incident as domestic violence on repeated occasions during the adversarial hearing. Investigator DANIELLE knew based on all accounts that there was never a domestic violence incident and the false reporting of a crime, that ELAINE maliciously used as material of fact. No reasonable social worker could believe that domestic violence occurred within the proximity of children, when law enforcement told them "domestic violence" did NOT happen, when the parents TIFFANY AND JOHN told them it did not happen and when an almost 12-year-old child told them it did not happen. All this was done with the approval of BRITTANY and FELISHA.

### Count 3-Violation of SUBSTANTIVE DUE PROCESS

### Under the Fourteenth Amendment

### (Against ALL Defendants and DOES 1 through 10, inclusive)

**65.**  Plaintiff re-alleges, and incorporates herein as if set forth in full, all of the preceding Paragraphs 1-64 above as though fully plead herein.

**66.** Plaintiff also alleges violation of  substantive due process as the children were removed for **6 months. JN was placed in foster care for nearly a month then with SHELDON who had not seen the child for seven (7) years and MD was placed in five (5) different foster homes over a period of six months the time the child was removed from TIFFANY.**

**67.** In *Romero v. Brown*, 937 F.3d 514, 523 (5th Cir. 2019) the Court said  "The ones who are seized the children, may assert a Fourth Amendment claim (brought on their behalf by the parents). *Gates v. Tex. Dep't of Protective & Regul. Servs., 53*7 F.3d 404, 427 (5th Cir. 2008). The parents who lose control of their children may assert a due process right. *Id.* at 434. As a result, in child removal

cases we have repeatedly allowed parents to vindicate their due process right to direct the upbringing of their children even when the same conduct supports a child's Fourth Amendment claim. Id; *Wernecke v. Garcia*, 591 F.3d 386, 391 n.7 (5th Cir. 2009); *Wooley v. City of Baton Rouge*, 211 F.3d 913, 923-26 (5th Cir. 2000).

**68.** In ***Romero v. Brown, i.d.*** **the Court said,** "Cases since have found **[*11]** clear violations of substantive due process only when the removal measured in months or years. *See id.* at 918 (finding violation when mother lost custody of her child for approximately three months); *Morris v. Dearborne*, 181 F.3d 657, 671 (5th Cir. 1999) (finding violation when child was placed in foster care for three years and cut off from all contact with her father during that time)." In the instant action, the actions of the defendants resulted in the children being removed for six (6) months.

**69.** The defendants participated in conducting a SHAM investigation, withholding exculpatory evidence, violating state law as well as their own policies and procedures, misrepresenting facts of the case to the state court, and selective omitting critical evidence from the narrative reports. Such behavior is an abusive, irrational, malicious, and oppressive use of governmental power." "It is beyond purview that any rational social worker could believe that governmental destruction of a family based on fabricated evidence is allowed. See Stanley, 405 U.S. at 651" Morris v. Dearborne 181 F3d. 657 (5th Cir. 1999). ELAINE'S role was not limited to that of a mere reporter of suspected abuse. ELAINE contemplated for four (4) days how ELAINE was going to deprive Plaintiff's Fourth and Fourteenth amendment .rights. ELAINE created false evidence that was presented to the state court judge and to other TDFPS officials in the first instance when she created the actual allegation of child abuse. There is also evidence of a second instance when she continued to lie when being questioned as the reporter, when she told investigator DANIELLE that TIFFANY was viewed to have an injury to her chin area (when it was merely just a "pimple") to falsely project some type of viewable evidence of

domestic violence between two parents. Defendant DANIELLE, BRITTANY, FELISHA  could reasonably conclude that this was a False allegation of child neglect for various reasons but most an importantly that credible witness' such as law enforcement discredited the allegations. Evidence was also presented to DANIELLE, BRITTANY, and FELISHA to show the malicious intent of ELAINE, the evidence of the fabrications and omissions that  ELAINE maliciously conspired.

### Count 4-Violation of SEARCH AND SEIZURE

### UNDER THE FOURTH (4th) AMENDMENT

**(Against MATA AND ELDRIDGEs and DOES 1 through 10, inclusive)**

**70.** Plaintiff re-alleges, and incorporates herein as if set forth in full, all of the preceding Paragraphs 1-69 above as though fully plead herein.

**71.**  Defendants MATA and CLARIDGE with the approval of HEMINGWAY and RODRIGUEZ prepared a request for a removal order that included false statements that were made knowingly and intentionally and with reckless disregard for the truth,  *Franks v. Delaware,* 438 U.S. 154, 155-56, 98 S. Ct. 2674, 57 L. Ed. 2nd 667 (1978, and " misleading material omissions that were reckless, intentionally, or knowingly omitted." See *Marks v. Hudson,* 933 F.3d 481, 487 (5th Cir. 2019) .These false statements were necessary for the finding of probable cause.   The *Franks* decision 'clearly established that a defendant's Furth Amendment rights were violated if (1) the affiant, in support of the warrant, includes "a false statement knowingly and intentionally, or with reckless disregard for the truth'  and (2) 'the allegedly false statement is necessary to the finding of probable cause'. *Winfrey v. Rogers,* 901 F. 3d. 483, 494 (5th Cir. 2018) quoting *Franks,* 438 U.S. at 155-56.

**72.**  The statements made by MATA  AND CLARIDGE in their affidavits in support of the removal orders were a deliberate falsehood and/or a reckless disregard for the truth and that but for the dishonesty by MATA and CLARIDGE in her affidavits in support of the removals order, the removal of the children would never have occurred.

73. There would be no reason for a judicial officer to sign such an order. The affidavits in support of removal contained false statements and omissions material to the finding of probable cause, thus probable cause was lacking. Where probable cause is otherwise lacking, an officer who obtains an order by recklessly or intentionally including false statements (or omitting material facts) cannot be said to have acted in a reasonable manner and the shield of qualified immunity is lost as a result of the Fourth Amendment violation.

74. As a result the children were taken without probable cause and were not retuned for a period of 6 months.

### Count 5- JUDICIAL DECEPTION

### UNDER THE FOURTEENTH  (14th) AMENDMENT

### (Against Defendant MATA and CLARIDGE and DOES 1 through 10, inclusive)

75. Plaintiff re-alleges, and incorporates herein as if set forth in full, all of the preceding Paragraphs 1-74 above as though fully plead herein.

76.  At all hearings subsequent to the removal both MATA and CLARIDGE In doing the things alleged herein above, Defendants, and each of them, voluntarily collaborated, acted in concert, and conspired to violate the above identified rights of the Plaintiff, including violation of Plaintiffs' rights found in the Due Process Clause under the U.S. Const. amends. IV, XIV by, but not limited to, presenting false allegations, false testimony, fabricated evidence, and the suppression of exculpatory evidence, before the court, including but not limited to the Affidavits in Support of the Removal and the false testimony at court hearings thereby violating Plaintiffs' rights found in  the  Fourteenth Amendment, respectively to the United States Constitution. A conviction obtained through [the] use of false evidence, known to be such by representatives **[*19]**  of the State, must fall under the Fourteenth Amendment." *Napue*, 360 U.S. at 269. **We assume in our analysis that this constitutional right is clearly established in the context of a hearing regarding the state taking custody of a child.** *See Marks v.*

*Hudson*, 933 F.3d 481, 487 (5th Cir. 2019) **at [19].**

77. As a result, the children were removed from TIFFANY for a period of six (6) months until TDFPS non-suited and dismissed the case and the children were removed.

78. As the direct and proximate result of the aforementioned actions of all the defendants CLARIDGE, and each of them, the Plaintiff  has suffered, and will continue to suffer, physical, mental, and emotional injury, all to an extent and in an amount subject to proof at trial along with attorney fees incurred in the State CPA case. Plaintiff has also incurred, and will continue to incur, attorney's fees, costs and expenses, including those authorized by 42 U.S.C. § 1988 an extent and in an amount subject to proof at trial.

79. On information and belief, said defendants, and each of them, acted with malice and with the intent to cause injury to Plaintiff, or acted with a willful and conscious disregard of the rights of Plaintiff in a despicable, vile, and contemptible manner.  Therefore, Plaintiff is entitled to an award of punitive damages for the purpose of punishing Defendants and to deter them and others from such conduct in the future.

## **PRAYER**

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

1.      General damages and special damages according to proof, but in no event less than $1,000,000 including attorney fees incurred in the state action according to proof at trial.

2.      As against all individual defendants, punitive damages as allowed by law;

3.      Attorneys' fees pursuant to 42 U.S.C. § 1988, and any other appropriate statute;

4.      Costs of suit incurred herein; and

5.      Such further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury of all issues so triable.

Dated:  September 8, 2021

/s/ by Edward A. Rose, Jr.

Edward A. Rose, Jr., Esq. (TX BAR No. 24081127)

Attorney-in-Charge

Edward A. Rose, Jr., P.C.

3027 Marina Bay Drive Suite 208

League City, Texas 77573

T (713) 581-6029

F (832) 201-9960

edrose@edroseattorneycpa.com

COMPLAINT