# EXHIBIT A

NOTICE: THIS DOCUMENT
CONTAINS SENSITIVE DATA

CAUSE NO. DC-19-50260

| | | |
|---|---|---|
| IN THE INTEREST OF | § | IN THE DISTRICT COURT OF |
| | § | |
| M███ D███ | § | CORYELL COUNTY, TEXAS |
| J███ N███ | § | |
| | § | |
| CHILDREN | § | 52ND JUDICIAL DISTRICT |

## AFFIDAVIT

IN THE STATE OF TEXAS

Before me, the undersigned authority, personally appeared affiant, who, having been by me first duly sworn, upon oath stated to be over 21 years old and to have personal knowledge of the facts stated herein:

My name is Danielle Claridge. I am of sound mind and capable of making this affidavit. The facts stated in this affidavit are within my personal knowledge and are true and correct.

At the time of the filing of this petition, an interstate placement is not planned, but the Texas Department of Family and Family Services will comply with all requirements of the Interstate Compact on the placement of child as set forth in Chapter 162, Subchapter B, Texas Family Code.

## HOUSEHOLD COMPOSITION

The household consists of Tiffany Bissell, mother (DOB: 05/12/1987), John Dumdie, father (DOB: 08/01/1973), J███ N███ (DOB: 04/08/2008), and M███ D███ child (DOB: 10/19/2015).

## CURRENT ALLEGATIONS

On September 3, 2019, the Department received a report alleging that on August 30, 2019, Ms. Bissell was the aggressor in a domestic violence incident with Mr. Dumdie. It was reported that Ms. Bissell slapped Mr. Dumdie with the back of her hand while Mr. Dumdie was driving. At a later time Ms. Bissell punched Mr. Dumdie in the face. Mr. Dumdie had visible injuries on his

Affidavit in Support of Petition for Protection of a Child
Page 1

Filed
CORYELL COUNTY
10:00 o'clock A.M.
SEP 10 2019

Ruby Mask
DISTRICT CLERK

Bissell Affidavit

TRUE AND CORRECT COPY

face after the domestic violence. It was unknown at the time where Michael was during the incident. Ms. Bissell has demonstrated violent behaviors that are a danger to Michael.

## CURRENT INVESTIGATION

On September 04, 2019, Investigator Danielle Claridge contacted DFPS Conservatorship Worker, Elaine Mata, regarding the concerns for the family. Ms. Mata explained to Investigator that she and CASA Supervisor, Denise Hanley, attempted a home visit with Ms. Bissell and Mr. Dumdie on August 30, 2019. Ms. Mata stated Ms. Bissell was very uncooperative with the Department during the visit, which included Ms. Bissell using profanity and screaming. Ms. Mata stated during the home visit she viewed Ms. Bissell to have an injury to the right side of her face which appeared bruised and Mr. Dumdie to have an injury to his left eye. Ms. Mata indicated these observations were also noted by Ms. Hanley. Ms. Hanley's documented report contained the following:

"Tiffany Bissell was making it extremely difficult to hold a conversation with John Dumdie. Tiffany Bissell kept interjecting for John Dumdie not to converse with CASA or CPS referring to us as 'them'...CASA observed Tiffany Bissell to have an injury to the right side of her face which appeared bruised which she was covering, with what appeared to be a cold compress. CASA asked if she had toothache. Tiffany responded she was bitten by a spider and she was going to see the doctor. CASA also observed John Dumdie to have an injury to his left eye....CASA observed Tiffany Bissell to be unable to control her emotions. She was speaking with rage and would pace back and forth in the meeting. On numerous occasions John Dumdie had to ask Tiffany Bissell to allow him to answer the questions which were being asked. CASA observed Tiffany would cut him off when speaking."

Ms. Mata stated during her home visit on the 30th she was able to see Michael running around the home with no concerns. Ms. Mata stated her home visit ended "due to the increasingly difficulty to conduct a viable meeting". From the CASA report, "Tiffany was literally yelling and used profanity, all of which was happening in the presence of her child. On leaving the dwelling, Tiffany Bissell refused to allow John Dumdie to see CPS and CASA out. CASA observed Tiffany grab John Dumdie by his clothing on the right side of his should pulling him back and telling CPS and CASA not to come back to her home. John Dumdie was insisting he was following us out of the home. Once outside the home, leaving Tiffany and his son in the home; Tiffany Bissell was yelling extremely loudly. As Tiffany was already in a fit of rage, John Dumdie was asked to return to the home to ensure the child was ok."

On September 5, 2019, Investigator Danielle Claridge attempted to complete an interview with Ms. Bissell and Mr. Dumdie at the residence. Upon arriving to the property, the gate was observed to be locked. Investigator attempted to contact Mr. Dumdie's cell phone which was not answered; a voicemail was left requesting a call back. Investigator again attempted to contact Mr. Dumdie's phone five minutes later to which the call was answered. Investigator expressed to Mr. Dumdie that the Department needed to assess child safety due to the allegations of the altercation between he and his wife. During the conversation, the call was disconnected. Mr. Dumdie contacted Investigator back advising he was very busy today but would agree to meet Investigator at the Copperas Cove DFPS office to further discuss. Mr. Dumdie and Ms. Bissell arrived at the office. Investigator Claridge met with Mr. Dumdie and Ms. Bissell in the lobby and requested to complete the interviews separately. During the interview with Ms. Bissell, she stated she "knew" the Department would be making a report on her family. Ms. Bissell stated that she has a "skin

infection" and is receiving treatment through Darnall Hospital while waving a piece of paper around that was brought with her. Investigator requested to see the paperwork that Ms. Bissell had brought with her regarding the alleged skin infection to which Ms. Bissell denied. Ms. Bissell informed the investigator that the Department did not need to know her medical history. Ms. Bissell stated that she never punched her husband, and that Friday, August 30, 2019, was "the first time" she has seen her husband since his return from working overseas. Ms. Bissell stated that Mr. Dumdie talked to an attorney regarding a divorce, but Mr. Dumdie was informed there was no way he would get custody of the children away from her. Ms. Bissell stated Mr. Dumdie received the marks on his face from "weed whacking" and a rock hitting him in the eye causing the mark. Investigator discussed the children in the home with Ms. Bissell as J███ and M███. Ms. Bissell stated that J███ has autism. In a previous case on March 4, 2019, it was noted that J███ was placed in a facility for treatment in San Marcos, Texas. Ms. Bissell stated at this time she did not want the Department speaking with any of her children. Investigator Claridge attempted multiple times to discuss the reason for the visit with the children as child safety to which Ms. Bissell stated the Investigator could "just get a court order and take [her] back to court" as the Department is prohibited from seeing her children.

On September 5, 2019, Investigator Claridge conducted an interview with Mr. Dumdie to gather information. Mr. Dumdie stated that on August 27, 2019, there was an argument that occurred with Ms. Bissell but that the argument was at no point physical. Mr. Dumdie stated the argument occurred due to Ms. Bissell taking things from the home such as a 1 oz. gold bar and pawning it. Mr. Dumdie stated that he contacted the Sheriff's office for information on what he can legally do. Mr. Dumdie stated on August 30, 2019, there was another argument that occurred with Ms.

Bissell while the couple was driving and away from the home. Mr. Dumdie stated the argument was regarding money that was spent while he was overseas working and Ms. Bissell having an affair. Mr. Dumdie stated Ms. Bissell talked about taking the children away from him and leaving the state. Mr. Dumdie stated he contacted the Sheriff's Office again and stated that Ms. Bissell assaulted him. Mr. Dumdie stated that Ms. Bissell never hit him as he hit himself, and he already spoke to an officer about this. Mr. Dumdie stated the children were not in the vehicle when the argument occurred. Mr. Dumdie stated he understands the Department must see the children and assess safety, but Ms. Bissell has hesitation with cooperating due to the previous cases with the Department.

On September 5, 2019, Investigator Claridge conducted an interview with Law Enforcement, Coryell County Sheriff's Department Deputy Burgan. Deputy Burgan stated that he responded to a call from Mr. Dumdie on August 27, 2019, stating he noticed that Ms. Bissell had taken belongs from the home. Mr. Dumdie had felt Ms. Bissell's actions of pawning items from the home was to fulfill her "gambling addiction". Deputy Burgan was advised that an altercation occurred between Mr. Dumdie and Ms. Bissell in the form of Ms. Bissell slapping him. Deputy Burgan stated Mr. Dumdie described that after the slapping from Ms. Bissell, Mr. Dumdie restrained Ms. Bissell and "put her on the ground". Deputy Burgan stated Mr. Dumdie did not want to file charges against Ms. Bissell as no injuries were received. Deputy Burgan stated during the visit to the residence, no children were referenced by Mr. Dumdie nor viewed by himself. Deputy Burgan stated he was unable to speak with Ms. Bissell regarding the incident as Ms. Bissell was said to be in Killeen.

Investigator attempted to speak with Officer Vazquez, Coryell County Sherriff's Office, who also responded to another domestic incident on August 30, 2019. This attempt was unsuccessful, but the police report was received noting Mr. Dumdie called law enforcement due to being "back handed while driving". The police report also stated "Mr. Dumdie had marks on his face". Per the report, while Officer Vazquez was at the residence obtaining a report, Ms. Bissell arrived to the residence. When Ms. Bissell arrived, Mr. Dumdie "decided he did not want to file any charges after Ms. Bissell stated that Mr. Dumdie most likely had punched himself in the face".

On September 6, 2019, Investigator Claridge received a telephone call from Mr. Dumdie who wanted to bring Michael to the DFPS office for a photo. During conversation Mr. Dumdie confirmed with Investigator that Jordan was living back in the residence, but she was currently at school. Mr. Dumdie arrived at the Department at 10:44 a.m. with Michael. Investigator Claridge requested to know if Ms. Bissell knows that Mr. Dumdie brought Michael to the office to which he responded "yea sure". Michael was observed by the investigator to grab ahold of Mr. Dumdie's legs and hide behind him.

Investigator Claridge asked Mr. Dumdie what his plans moving forward with Ms. Bissell are to which he responded with he is "willing to work it out" with his wife. He indicated he and Ms. Bissell needed to work through things on his daughter C█████ CPS case, and also that he is willing to work with the Department regarding this case. Mr. Dumdie ended the conversation stating he is still working on discussing with Ms. Bissell bringing Jordan to the office, but there is a lot of distrust with the Department.

**On September 6, 2019,** an Aid to Investigate was filed by the Department and granted. Investigator Claridge conducted an interview with J███ Nold to gather information. J███ stated that she returned from San Marcos to the residence with Ms. Bissell and Mr. Dumdie on June 19, 2019. J███ stated that there is fighting within the home, but there is no pushing or shoving; the fighting is with Ms. Bissell and Mr. Dumdie with their words. Jordan stated there is "a lot of cusswords" and she doesn't "like that".

**On September 6, 2019,** Investigator Claridge arrived to the residence of Ms. Bissell and Mr. Dumdie with Officer Crossman, to provide the Aid to Investigate and request to interview Michael and view the home. Investigator was greeted in the driveway of the home by Mr. Dumdie. Mr. Dumdie noticed Officer Crossman and greeted him with "long time no see". Investigator provided a copy of the Aid to Investigate to Mr. Dumdie and Ms. Bissell came from the home, into the garage, and into the driveway with erratic behavior. Ms. Bissell immediately began yelling to Officer Crossman that Mr. Dumdie should be arrested for filing a false police report and "these motherfuckers are not coming into my home". Investigator provided Ms. Bissell a copy of the Aid to Investigate. Officer Crossman requested that Ms. Bissell calm down resulting in Ms. Bissell leaving the driveway and going back into the home. Mr. Dumdie was observed by the investigator to be reviewing the Aid to Investigate. Investigator informed Mr. Dumdie the Aid was for the purpose of the Department to interview J███ and M███ in a private setting and view the home where the children stay. Ms. Bissell came back into the driveway again yelling and cussing at the investigator and Officer Crossman. Again Officer Crossman requested that Ms. Bissell calm down causing Ms. Bissell to go in the garage by the door and sit down. Investigator informed Mr. Dumdie that an interview was completed with

J[REDACTED] at the school as the Aid to Investigate allowed. Mr. Dumdie stated that the family informed the Department they could not speak with the children at school. Investigator showed Mr. Dumdie on the Aid to Investigate where this was approved and signed by the Judge. Ms. Bissell again came to the driveway still yelling and cussing that the Department will not speak with her children or enter her home. Officer Crossman asked both Ms. Bissell and Mr. Dumdie if they were in agreeance to not allow us into the home to conduct the interview and view the home, to which Mr. Dumdie stated "yes". Officer Crossman informed the investigator that we would have to leave the property per the request, to which the investigator complied.

**On September 6, 2019,** Investigator Claridge spoke with Officer Vazquez with Coryell County Sheriff's Office to gather information. Officer Vazquez states he went to the residence of Mr. Dumdie and Ms. Bissell due to an incident that involved family violence in a vehicle on August 30, 2019. Officer Vazquez states upon arriving to the residence Mr. Dumdie had a "mark on his eye"; Ms. Bissell was viewed without injury. Officer Vazquez stated when he was at the home he saw the children in the living room; one child was asleep and the other watching TV. Officer Vazquez states there was no indication of concerns for the children. Officer Vazquez stated there had to be arguing in the residence at some point, but the reported altercation was in the car away from the kids. Officer Vazquez stated the children were left at the residence with friends of the family while Mr. Dumdie and Ms. Bissell were away. Officer Vasquez indicated he confirmed the children's whereabouts by speaking with the family friend. Officer Vazquez states Ms. Bissell was pretty agitated when he was at the residence, but he was able to get her to calm down. Officer Vazquez states Ms. Bissell submitted a statement to him regarding the incident. Officer Vazquez states Ms. Bissell was pissed off that her husband pulled a "fast one" on her by calling

the police for their argument as it at no-point was physical. Officer Vazquez stated while at the home, after talking with Ms. Bissell, Mr. Dumdie then recanted his statements about the violence occurring. Mr. Dumdie had been informed that there could be legal consequences for filing a false police report if his initial report was untrue. Mr. Dumdie then informed Officer Vazquez that he had in-fact punched himself in the eye. Officer Vazquez states Mr. Dumdie and Ms. Bissell were in the middle of a divorce. Officer Vazquez indicated no arrests were made or criminal charges filed on this date. Officer Vazquez states later that evening Ms. Bissell contacted him and informed him that she was bit by a spider on her face and had to be treated at the hospital. Officer Vazquez stated when CPS came by Ms. Bissell told him she had an ice pack on her face. Officer Vazquez states he has no reason to believe Ms. Bissell had any indication of deceit. Officer Vazquez states Ms. Bissell has anxiety and is on edge when dealing with CPS and can get agitated. Officer Vazquez states the family is under the impression that CPS is retaliatory towards them.

On September 7, 2019, Investigator Claridge spoke with Mr. Dumdie for the purpose of gathering information. Investigator informed Mr. Dumdie that the Aid to Investigate was provided to himself and Ms. Bissell to conduct the interviews and view the home based on the current investigation. Mr. Dumdie continued to resort back to a previous CPS case dealing with his eldest daughter to which Investigator had to redirect Mr. Dumdie to the current case. Mr. Dumdie stated there is frustration with dealing with the Department, and that he would speak with his lawyer concerning this case. Mr. Dumdie stated the case is "thoroughly ridiculous" as both police reports show the children were not present during the disputes. Mr. Dumdie requested to know if the investigator spoke with Officer Vazquez to which the investigator

confirmed. Mr. Dumdie again requested to know what needed to be done. Investigator informed Mr. Dumdie that yesterday, September 7, 2019, the investigator along with Officer Crossman attempted to complete the Aid to Investigate for the interviews and home view to help move the investigation along, there was no cooperation with the investigation. Investigator informed Mr. Dumdie that a note would be made of his request to speak with his attorney and his request to speak with Ms. Bissell for cooperation.

**CRIMINAL HISTORY**

**Tiffany Bissell:**

No hit returned

**John Dumdie:**

On April 22, 1991, Mr. Dumdie received a charge for assault which resulted in community supervision

On March 2, 1992, Mr. Dumdie received a charge for terroristic threatening with a disposition of convicted and 180 days of probation applied.

**ICPC COMPLIANCE**

At this time no interstate placement is planned. If an interstate placement becomes an option DFPS will comply with the Interstate Compact on the Placement of Children, TEX. FAM. CODE CH. 162, SUBCHAPTER B.

**HISTORY**

On March 4, 2019, the Department received a report concerning alleged physical abuse of C███ Dumdie perpetrated by Ms. Tiffany Bissell. The report indicated C███ and Ms. Bissell engaged in a physical altercation to which C███ was left with bruising to her face, along with a

cut present above one of her eyes. The report indicated Ms. Bissell had a present mark on her hand where C█ allegedly had bitten her. The report indicated the altercation was a result of C█ not doing homework in several days and Ms. Bissell being frustrated with this. The report indicated a bruise on the child's eye as well as bruising on her chin which did not require emergency medical services. The child's father is currently overseas for employment, leaving Ms. Bissell to provide for C█'s well-being and safety. There is a long history of conflict between C█ and Ms. Bissell which recently resulted in physical injuries to the child. Ms. Bissell has indicated she is will no longer provide care for C█ leaving C█ without a caregiver. The allegations of physical abuse were found Reason to Believe by the Department. C█ was removed from the home as the Department was granted Temporary Managing Conservatorship. C█ currently resides with a family member. CASA report on August 30, 2019, has expressed that participation of Ms. Bissell and Mr. Dumdie in parenting classes would be "more proactive in demonstrating responsibility of affective parenting with C█". CASA also expressed that there are "concerns with the reported physically abuse and verbal abuse by Mr. Dumdie and Ms. Bissell, both would benefit greatly from individual therapy to address anger management". It was requested Mr. Dumdie undergo a psychological evaluation. At this time it was believed it was in the best interest of C█ to not have communication with Mr. Dumdie and Ms. Bissell due to C█ becoming very distressed and anxious. During the home visit on August 30, 2019, with CASA and the Department upon arrival to the residence Ms. Bissell was not "present and when asked if she would join the meeting Mr. Dumdie stated that she did not wish to speak with CPS of CASA". Ms. Bissell would enter the visit at a later time "making it extremely difficult to hold a conversation with Mr. Dumdie".

On April 04, 2018, the Department received a report concerning the physical abuse of C[redacted] Dumdie by Mrs. Tiffany Bissell. It was reported C[redacted] sustained several red marks and a bruise on a non-vital body area due to stepmother hitting C[redacted] with a hanger for not cleaning well enough. During the investigation, both Mr. Dumdie and Ms. Bissell acknowledged using physical discipline including using a belt. Both parents acknowledged discipline does not affect C[redacted]. C[redacted]'s sibling, Jordan, who is autistic also reported being spanked with a belt by the parents. Allegations were ruled out as the discipline did not meet the definition of abuse. During this case, a report was received for the neglectful supervision of a 2 year old relative (Case: Armstrong) who was reported to have sustained a head injury while in the care of Ms. Bissell. Ms. Bissell and Mr. Dumdie refused to acknowledge the Department's concerns, and denied ongoing services or a plan for their own home. Ms. Bissell was substantiated in the Armstrong case, and the Department requested the family participate in court-ordered services. Ms. Bissell engaged in counseling, as did C[redacted]. Mr. Dumdie was out of the country due to his employment, and therefore did not complete services. Ms. Bissell was noted to attend counseling, but was focused on the disposition for her case during sessions. She was provided education on appropriate and alternative discipline for the children. There was an obvious parent-child conflict noted during the case between Ms. Bissell and C[redacted]. C[redacted] was reported to acknowledge antagonizing situations in the home and attempting to manipulate her sibling to make untrue statements about the family functioning and dynamic. Ms. Bissell disputed the claim of neglectful supervision; the disposition was overturned from reason to believe to unable to determine.

On July 26, 2017, the Department received a report concerning the neglectful supervision of C[redacted] by Ms. Bissell. There was an allegation of physical abuse of C[redacted] by Mr.

Dumdie. C___ was listed as a perpetrator of sexual abuse of two children, Jersie and Madison Negrete, and she was also reported as a victim of sexual abuse by an unknown perpetrator. Allegations with C___ as a perpetrator were administratively closed, as these children were not members of the home. There were reported concerns for Mr. Dumdie using excessive discipline with C___ Also noted were concerns for C___ not receiving her medication for mental health management. These allegations were ruled out, as C___ was free from injury. It was noted C___ had missed numerous therapy appointments, but her grandparents were ensuring her needs were met. Mental health provider mentioned Mr. Dumdie and Ms. Bissell are "hard" on C___ and Ms. Bissell did not appear to understand how to manage C___'s behaviors. During the case, C___ did admit to kissing her cousin, but this was attributed to child exploration or play.

On February 05, 2017, the Department received a report concerning medical neglect of C___ Dumdie. It was reported C___ had been residing with her paternal grandparents after Ms. Bissell demanded C___ leave the residence. There were reported concerns Mr. Dumdie and Ms. Bissell were not providing C___ her psychiatric medications or following mental health recommendations prior to living with the grandparents. C___ received therapy for Kleptomania on a weekly basis. There was no indication that the missed appointments while under the care of John Dumdie and Tiffany Bissell's care resulted in observable impairment to the growth, development, or functioning of the child. Allegations were Administratively Closed.

On November 02, 2017 the Department received a report regarding physical abuse of J___ Nold and neglectful supervision of M___ Dumdie. It was reported by the district communication platform called Schoology that 9 year old J___ was hit by her mother, grabbed by the arm, and pulled by her hair. It was reported that the incident occurred because J___ allowed her little brother to fall asleep on her (J___) bed. Tiffany Bissell, mother, used

inappropriate discipline with Jordan that resulted in minor injuries to a vital and non-vital body area. M▇▇ Dumdie, 2 year old, walked outside of the home alone for about 35 minutes. Law enforcement was dispatched and located Michael two houses down. John Dumdie, father, arrived to the residence stated he was at another location where the family would be moving to soon. Mr. Dumdie thought M▇▇ was asleep with Tiffany Bissell, mother. Mrs. Bissell was upset that M▇▇ got out of the home. Mrs. Bissell confirms she works nights and allows M▇▇ to sleep with her when Mr. Dumdie is home. Mr. Dumdie and Mrs. Bissell were observed to appear appropriate. J▇▇ 9 year old, made an outcry of physical abuse by John Dumdie that caused an injury to a vital body area. J▇▇ arrived at school November 6, 2017, with a bruised eyelid. J▇▇ stated she was hit by Mr. Dumdie due to being suspended. Allegation of neglectful supervision of M▇▇ by John Dumdie has been ruled out. M▇▇ was left in the care of Mrs. Bissell while the two slept. It was observed by law enforcement that the residence had child locks present on the door and there were no concerns from Mr. Dumdie. Allegation of neglectful supervision of M▇▇ Dumdie by Tiffany Dumdie was ruled out. Mrs. Bissell stated M▇▇ was sleeping when Mr. Dumdie left the residence. Law enforcement observed that the residence had child locks present on the door and there were no concerns. Mrs. Bissell took extra safety precautions to ensure M▇▇'s safety. Allegation of neglectful supervision of J▇▇ by Mr. Dumdie was ruled out. J▇▇ was in school at the time fo the incident. Allegation of physical abuse of J▇▇ by Mrs. Bissell was ruled out. There was no information provided which indicated J▇▇ resulted in physical injuries. J▇▇ was viewed free of injury, there was not sufficient information to support Mrs. Bissell placing J▇▇ in substantial harm. Allegation of physical abuse of J▇▇ by Mr. Dumdie was ruled out. The information reported was not consistent to the injury sustained to J▇▇'s eyelid. The school nurse personnel advised the

injury to Jordan's eyelid was the size of an eraser of a pencil. J▓ has history of previously being carried out of the school because of uncontainable tantrums which could have resulted in the injury.

On January 12, 2017, the Department received a report regarding physical abuse on J▓ Nold by John Dumdie. It was reported that J▓ arrived at school in a bad mood and claimed that John Dumdie had pushed her out of the bed onto the floor. J▓ stated she was kicked by John because she wouldn't get up and get ready for school. J▓ stated Mrs. Bissell was not present during the incident as she was at work. J▓ had no visible injuries. Allegation of physical abuse of J▓ by Mr. Dumdie was ruled out. The department was unable to interview J▓ about the incident. J▓ was observed to have no visible marks or bruises. There was not enough evidence to support the incident that took place between J▓ and Mr. Dumdie.

On November 29, 2016, the Department received a report regarding neglectful supervision of M▓ Dumdie by Tiffany Bissell, mother. It was reported that M▓ 1 year old, had access to the sibling's psychotropic medication. The sibling took the medication and was left in the direct reach of M▓. Mrs. Bissell south timely and appropriate medical attention for M▓ The case was administratively close. Allegation of neglectful supervision by Mrs. Bissell was not found as the sibling did not follow the typical routine of properly placing the medication on the top shelf out of reach from M▓. There was no indication that M▓ digested any of the medication following medical monitoring at the ER.

## ASSESSMENT

The Department is requesting Temporary Managing Conservatorship of M▓ Dumdie and J▓ Nold, as the residence is not safe in the care of John Dumdie and Tiffany Bissell. The

family is currently involved with the Department due to a removal of an older child, C█████ Dumdie. Ms. Bissell has a history of controlling, abrasive behaviors, which likely have played a part in the altercation which occurred between Mr. Dumdie and Ms. Bissell. The Department is concerned that Ms. Bissell's erratic behavior has and will likely to continue to place the children in danger. At this time, the Department has made attempts to contact Ms. Bissell and Mr. Dumdie. Ms. Bissell has hindered the investigation by not allowing the Department to speak with her children. Ms. Bissell is unresponsive to the Department's attempts to interview and fully assess the children. Without the ability to properly investigate these allegations, the children in the residence are potentially at risk of harm or neglect. The Department is concerned due to the past domestic violence and abuse allegations that has occurred around the children, resulting in the children being removed. It is believed that without the Department's intervention, the children would be subject to harm based on the escalating aggressive behaviors and lack of appropriate caregivers.

"Based on the above facts, I believe there is a danger to the physical health or safety of the children, or the children have been the victim of neglect or abuse and that continuation in the home would be contrary to the children welfare; and that reasonable efforts consistent with the physical health and safety of the children have been made by the Department to prevent or eliminate the need for removal of the child from the home."

_____
Danielle Claridge
Child Protective Services Investigator

SUBSCRIBED AND SWORN TO BEFORE ME, this the __Ninth__ day of __September__, 2019.

*[signature]*
NOTARY PUBLIC IN AND FOR
THE STATE OF TEXAS
My Commission Expires: 3-02-2022


TONI LEE MASKUNAS
NOTARY PUBLIC STATE OF TEXAS
MY COMM. EXP. 03/02/2022
NOTARY ID 1018062-2

STATE OF TEXAS
COUNTY OF CORYELL

Certified to be a true and
correct copy of the original
in my custody. Given under
my hand and seal.
Date 2/25 AD20 21
Billy Mock
Clerk of the District Court
By *[signature]* Dep.