**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| TIFFANY BISSELL, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| ELAINE MATA, in her individual capacity, | § | Case No. 6:21-CV-00924-ADA-JCM |
| DANIELLE CLARIDGE, in her individual | § | |
| capacity, BRITTANY HEMINGWAY, in | § | |
| her individual capacity, FELISHA | § | |
| RODRIGUEZ, in her individual capacity; | § | |
| and DOES 1-10, Inclusive. | § | |
| Defendants. | § | |
| | § | |

---

**DEFENDANTS ELAINE MATA, DANIELLE CLARIDGE, BRITTANY HEMENWAY, AND FELISHA RODRIGUEZ'S ORIGINAL ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT**

---

TO THE HONORABLE JEFFREY C. MANSKE:

NOW COME Defendants Elaine Mata, Danielle Claridge, Brittany Hemenway, and Felisha Rodriguez (collectively the "Defendants") and file this Original Answer to Plaintiff's First Amended Complaint. (Doc. 24).

**PLAINTIFF'S FIRST AMENDED COMPLAINT**

### I.   JURISDICTION AND VENUE

1. Admit.

2. Admit.

3. Admit.

### II.   PARTIES

4. Defendants do not have sufficient information at this time to admit or deny that the Plaintiff

1

Tiffany Bissell ("Plaintiff") "cared for and nurtured her children M.D. and J.N., and enjoyed their company, companionship, and society of M.D. and J.N. and all other benefits and burdens of her rights of familial association with her children." Admit the rest of the paragraph.

5.  Admit that Elaine Mata is a current employee of Texas Department of Family and Protective Services ("TDFPS") and is sued in her individual capacity. Deny that she committed any unconstitutional acts. Deny that Mata resides in Coryell County, Texas, as Mata resides in Killeen Texas, which is located in Bell County.

6.  Admit that Danielle Claridge is an employee of TDFPS and sued in her individual capacity. Deny that she committed any unconstitutional acts.

7.  To the extent that Plaintiff intends to sue Brittany Hemenway, as no individual named "Brittany Hemingway" is employed by TDFPS, admit that Brittany Hemenway is an employee of TDFPS and is sued in her individual capacity. Deny that she committed any unconstitutional acts.

8.  Admit that Felisha Rodriguez is an employee of TDFPS and is sued in her individual capacity. Deny that she committed any unconstitutional acts. Deny that Rodriguez was a Regional Supervisor (she was a Program Director).

9.  Admit that Defendants are employees of TDFPS and that Hemenway and Rodriguez held supervisory authority over Claridge. Deny that Hemenway or Rodriguez held supervisory authority over Mata. Deny that the Defendants committed any unconstitutional acts. Deny that the Defendants engaged in any type of conspiracy. Deny that the Defendants aided, abetted, conspired, or collaborated to commit any unconstitutional acts.

10. Admit that Defendants are being sued in their individual capacities. Deny that the Defendants

committed any unconstitutional acts or that the Defendants conspired to commit any unconstitutional acts.

11.  Deny that Defendants DOES 1–10 committed any unconstitutional acts. Deny that DOES 1–10 are liable or legally responsible for any unconstitutional acts and the damages and injuries alleged by the Plaintiff.

12. Admit that Defendants are employees of TDFPS. Admit that Hemenway and Rodriguez held supervisory authority over Claridge. Deny that Hemenway and Rodriguez held supervisory authority over Mata. Deny that Defendants committed any unconstitutional acts. Deny that Hemenway and Rodriguez are vicariously liable for any alleged actions of Claridge or Mata. Deny that the Defendants directed, ratified, and/or approved the conduct of one another. Deny that any of the Defendants engaged in any type of conspiracy.

## III.   FACTUAL ALLEGATIONS

### PRIOR TO THE SEIZURE OF THE CHILDREN M.D. AND J.N. ON SEPTEMBER 11, 2019 AS A PREDICATE TO THE CAUSES OF ACTION ALLEGED

13. Admit that C.D. is Plaintiff's stepdaughter and was 14 years old at the time of the alleged events described. Deny that C.D. is a problem child and/or abusive to Plaintiff or family members.  Defendants do not have sufficient information to admit or deny that a phone call to the sheriff's office took place on March 4, 2019. Admit that TDFPS Investigator Charles Carroll conducted an interview with C.D. and Plaintiff regarding the alleged events described. Admit most of the quoted language from the affidavit of Charles Carroll but deny that the quotation "TIFFANY did this to defend herself from the assault of C.D. C.D. then bit TIFFANY's hand" exists in the affidavit. Admit that Claridge explained in her September 2019 affidavit that Charles Carroll's report "indicated a bruise on the child's eye as well as bruising on her chin" (*See* Pl.'s **Exhibit A** (Doc. 24-1) at 11–12). Deny that Claridge lied or that her

affidavit contains any intentional or unintentional falsehoods. Admit that Plaintiff and John had previously been required by court order to attend family-based social services ("FBSS") concerning C.D., but deny that TDFPS required them to do it again. Deny that there was "no legitimate reason" for the requirement to attend FBSS. Deny that C.D. was "the aggressor" in the alleged events described.

14. Admit that the agency found Reason to Believe that both Plaintiff and John refused to assume parental responsibility of C.D. Deny C.D. was "a dangerous child". Admit that during Investigator Carroll's April 11, 2019 visit to the residence, Plaintiff and John indicated to Carroll that they wanted C.D. out of their home; that the Refusal to Assume Parental Responsibility of both Plaintiff and John regarding C.D. led to the TDFPS' removal of C.D. from the residence; that based on the Refusal to Assume Parental Responsibility of both Plaintiff and John, TDFPS emergently removed C.D. from the residence on April 11, 2019; and that TDFPS filed an emergency petition requesting temporary conservatorship of C.D. in the state court in Coryell County, Texas on April 12, 2019. Deny that C.D. was removed "without the approval of John" and that John "still wanted his daughter back in the home and was actually trying to reunify."

15. Admit that conservatorship worker Elaine Mata was assigned to work with C.D. and her family after the state district court gave the agency custody of C.D. Admit that TDFPS' Office of Consumer Affairs received a complaint from Plaintiff and John. Deny that Mata lied about contact with C.D., allowed C.D. to "go with fictive kin", refused placing C.D. with biological family, or made reunification of Plaintiff and John with C.D. impossible.

16. Admit that Plaintiff retained custody of J.N. and M.D. during this time. Admit that C.D. was placed with Brittani Baker, C.D.'s stepsister. Admit that John has no interest in a parent-child

relationship with C.D. Deny C.D. accused John or Plaintiff of child abuse. Admit that C.D. was diagnosed with sociopathic behavior. Admit that TDFPS investigated allegations that C.D. sexually abused Plaintiff's niece. Deny that TDFPS found that C.D. sexually abused Plaintiff's niece or any other person. Deny that TDFPS' removal of C.D. was based on any violent behavior allegedly exhibited by C.D.

## FACTS SHOWING THERE WAS NO DOMESTIC VIOLENCE

17. Admit that John was stationed in Iraq pursuant to his military obligations. Defendants do not have sufficient information to admit or deny at this time that John did not reside with Plaintiff from August 18, 2017 to October 18, 2019, that he had a resident visa in Iraq, that he returned to Texas every six months for 14 days, that Plaintiff temporarily moved out of the family home before John returned from Iraq, or that Plaintiff did not want M.D. or J.N. to be emotionally affected by a divorce. Admit that Plaintiff was considering a divorce from John at this time and that Plaintiff, M.D., and J.N. stayed in the home of Christina Wilkins. Defendants do not have sufficient information at this time to admit or deny how long Plaintiff, J.N., and M.D. stayed with Wilkins or if John periodically picked up M.D. and J.N. and returned them to Plaintiff.

18. Admit that John accused Plaintiff of stealing from him and pawning his things on August 27, 2019, that an argument between Plaintiff and John occurred, that John contacted the police regarding locating the pawned-off items, that John told the police that Plaintiff had started hitting him when he confronted Plaintiff about the allegedly stolen items. Deny that John told the police that J.N. and M.D. were not present when the argument took place. Defendants do not have sufficient information at this time to admit or deny whether John was attempting to "paint a picture to have an advantage in court" by calling the police, whether Deputy Burgan

believed that John was not being truthful, whether Plaintiff did not know about the phone call to the police until a few days later, or whether Plaintiff provided police with text messages or a google map location showing her whereabouts during the time of the alleged incident.

19. Defendants do not have sufficient information at this time to admit or deny anything alleged in this paragraph.

20. Defendants do not have sufficient information at this time to admit or deny whether Plaintiff traveled to the Hallmark Plaza bingo hall in Killeen, Texas on August 29, 2019, with Christina Wilkins and Patricia Robbins or the duration of the alleged trip. Admit that John mentioned to Deputy Burgan that Plaintiff was in Killeen gambling on August 27, 2019 when he called about the allegedly stolen items. Deny that Plaintiff and John were not together at any time on August 30, 2019.

21. Defendants do not have sufficient information at this time to admit or deny whether Plaintiff received numerous phone calls from Natalie Bermea on August 30, 2019, or the subject of the alleged phone messages or whether, based on these phone calls, Plaintiff traveled back to her home around 2:00 A.M. on August 30, 2019.

22. Defendants do not have sufficient information at this time to admit or deny that Plaintiff dropped off Christina Wilkins before heading to the residence on August 30, 2019, that Natalie Bermea was present when Plaintiff arrived at John's residence, that Officer Vasquez interviewed everyone at the scene including Natalie Bermea. Admit that, during his testimony at the October 2, 2019 hearing, Officer Vasquez indicated that the children in the residence who he observed sitting on the couch did not share the same ethnicity as J.N. or M.D. Admit that Deputy Vasquez responded to a domestic violence report made by John on August 30, 2019, that Plaintiff arrived at the residence around 2:00 A.M., that Officer Vasquez observed

two children inside the residence on the couch, that John decided not to file charges and that Plaintiff told Officer Vasquez that John most likely punched himself in the face, that Officer Vasquez told John that there could be legal consequences for filing a false police report if the initial report was untrue, and that John told Officer Vasquez that he and Plaintiff were going through a divorce. Defendants do not have sufficient information at this time to admit or deny whether Officer Vasquez noticed any injuries on Plaintiff's face during these events on August 30, 2019.

## <u>THE BEGINNING OF A SHAM INVESTIGATION</u>

23. Admit that Mata, Mata's supervisor Letesia Burell, and CASA supervisor Denise Hanley conducted a home visit on John's residence on August 30, 2019 regarding C.D. Deny that Claridge was told that Mata observed M.D. "running around with no concerns", but admit that Danielle stated that M.D. was seen wandering the home. Admit that they observed a mark on John's face. Deny that John was asked at this time about the mark on his face or that he explained it was a self-inflicted injury. Deny that Mata observed no concerns about the house. Deny that John was asked about or discussed the injuries observed on his face. Deny that the TDFPS workers did not observe any injuries on Plaintiff's face. Deny TDFPS wanted John to let C.D. stay with fictive kin. Defendants do not have sufficient information at this time to admit or deny whether TDFPS did not want to further litigate C.D.'s placement because Plaintiff does not specify a time frame. Deny that Plaintiff was present at the beginning of the home visit or that Mata, Burell, or Hanley were "accusatory" toward John and Plaintiff. Admit that the conservation eventually turned disruptive and the home visit ended because of this, but deny that Mata, Burell, or Hanley were the source of the disruption. Admit that the disruptive conversation occurred in the presence of M.D. Deny that Mata "was furious."

24. Admit that Mata is a conservatorship worker and not a TDFPS Investigator. Deny that Mata "maliciously intended to further investigate and find any evidence in order for TDFPS to conduct a full investigation". Admit that inquiry to Coryell police department was made regarding police records. Deny that an active investigation must be occurring for TDFPS to obtain police records. Defendants deny that Mata contacted or made an inquiry to the Coryell County Sheriff's Office or that she requested and obtained the dispatch report for the police incident on August 30, 2019 to which Officer Vasquez responded. Deny that a "call for service" received by a police department is unreliable or that a reasonable social worker such as Mata could interpret a call of service to reveal the lack of any crime or wrongdoing. Deny that Mata spoke to someone at the Coryell County Sheriff's Office at this time who explained to her that the incident was fully investigated and no domestic violence occurred. Deny that Mata committed any unconstitutional acts. Deny that Mata used the August 30, 2019 police incident "intentionally and with malice" and "further added facts that never occurred" to get TDFPS to open an investigation with the intention of seizing J.N. and M.D.

25. Admit that Mata, as a conservatorship worker, is a state-mandated reporter. Admit that TDFPS received an intake regarding neglectful supervision of M.D. ("Neglectful Supervision Report"). Deny that the Neglectful Supervision Report was related to child abuse. Admit that Texas Penal Code Section 21.11 requires professional mandated reporters to report suspected child abuse or neglect within 48 hours. Admit that Mata filed the Neglectful Supervision Report on September 4, 2019. Deny that Mata failed to file the Neglectful Supervision Report within 48 hours of obtaining credible information of such. Admit that Mata was provided with the "call for service" from the Coryell County Sheriff's Office. Deny that the Sheriff's Office told her the August 30, 2019 incident was fully investigated. Deny that Mata committed any

unconstitutional acts, intentionally or maliciously reported falsehoods to TDFPS, or intentionally or maliciously used the "call for service" allegedly received to create a false narrative. Admit that the Neglectful Supervision Report sent by Mata alleged that Plaintiff was the aggressor in a domestic violence incident and alleged that Plaintiff punched John in the face. Deny that Mata stated "Plaintiff demonstrated violent behaviors that are a danger to M.D." Deny that Mata determines the outcome of an intake or if the intake would amount to evidence of child abuse. Deny that Mata determines whether or not an intake report should be investigated. Admit that the whereabouts of M.D. during the August 30, 2019 police incident were unknown to Mata at the time of the Neglectful Supervision Report. Deny that Mata's Neglectful Supervision Report contained any intentional or malicious falsehoods. Deny that the "only time" domestic violence rises to the level of child abuse is if it occurs within the close proximity of a child.

26. Admit that law enforcement personnel are mandated reporters. Admit that the Coryell County Sheriff's Office did not report child abuse or neglect regarding J.N. or M.D. Deny that Mata or Claridge intentionally created a false investigation.

## **THE SHAM INVESTIGATION CONTINUES**

27. Admit that the statements in this paragraph quoted from Ms. Claridge's affidavit are accurately quoted. Admit that Plaintiff indicated she had a spider bite and she was going to see the doctor. Admit that on September 4, 2019, Claridge interviewed Mata about the August 30, 2019 home visit. Deny that Claridge requested records from the police department relating to the "call for service." Admit that Claridge received police records. Deny Mata or Claridge knew that Plaintiff's explanation as to the cause of her facial injury was false or that Mata used this alleged falsehood to "further influence and skew the results of the TDFPS investigation." Defendants

do not have sufficient information at this time to admit or deny that Plaintiff has time-stamped pictures of her face from August 30, 2019 or a doctor's note for the same day. Admit that Plaintiff brought a piece of paper to the interview that Plaintiff told Claridge was a doctor's note, but deny that Plaintiff allowed Claridge to view the paper.

28. Admit that on September 5, 2019, Plaintiff and John were separately interviewed by Claridge at the TDFPS office in Copperas Cove. Texas. Admit that Claridge asked Plaintiff about the injury on John's face and that Plaintiff told her that he may have been accidentally injured by a weed-whacker. Admit that Claridge asked to interview J.N. and M.D. and that Plaintiff refused. Deny that Plaintiff told Claridge that TDFPS "should not be concerned with how an adult had an injury and that she didn't commit domestic violence until Officer Vasquez verifies that violence occurred in front of J.N. or M.D., that the department is prohibited from doing as this was a false allegation made by TDFPS themselves", told TDFPS that "J.N. and M.D. were not well-served if they were subjected to an investigation based on a false allegation and could be traumatized",  that Mata received or obtained a call for service concerning the August 30, 2019 police incident, or that Office Vasquez told Mata that no domestic violence took place. Deny that TDFPS intended to use any false allegation "against her" or that Mata was "snooping around about her residence." Deny that Claridge had contact with Officer Vasquez on September 5, 2019, but admit that Claridge and Officer Vasquez spoke on the phone on September 6, 2019.

29. Admit the Claridge also interviewed John on September 5, 2019 at the TDFPS office in Copperas Cove, Texas. Admit that John told Claridge that on August 30, 2019, Plaintiff did not hit him and he injured himself. Admit that John told Claridge that J.N. and M.D. were not present when he and Plaintiff argued earlier that day in a vehicle. Defendants do not have

sufficient information at this time to admit or deny what Deputy Vasquez told Plaintiff or what he allegedly said to Mata. Defendants do not have sufficient information at this time to admit or deny John's motivations for allegedly injuring himself or what Deputy Vasquez told Plaintiff.

30. Admit that on September 5, 2019, Claridge spoke on the phone with Deputy Burgan of the Coryell County Sheriff's Office. Admit that Deputy Burgan indicated that there was no mention of children living in the home while he was at the home on August 27, 2019. Admit that Deputy Burgan indicated he did not see children during his home visit. Admit that Plaintiff was not at the residence during the home visit, that he understood Plaintiff to be in Killeen and that she did not arrive at the residence during Deputy Burgan's home visit. Deny that Deputy Burgan told Claridge that he did not feel John was being truthful.

31. Admit that Claridge's affidavit references receipt of a police report regarding the August 30, 2019 police incident. *See* **Pl.s' Exhibit A** (Doc. 24-1) at 7. Admit that Claridge attempted to reach out to Officer Vasquez on September 5, 2019, but was unsuccessful. Admit that Claridge received police records on September 4, 2019, and knew that the documents she received were documentation of the incident on August 30, 2019. Deny that Claridge drew a distinction between whether the documents she received were a "call for service" or "police report." Deny that Claridge noted any "discrepancies that showed a remarkable difference between what [Mata] reported to state wide intake and what actually said on the "call for service." Deny that, on September 5, 2019, Claridge "could reasonably formulate the allegation was untrue." Deny Claridge believed at this time that what was contained on the "call for service" was untrue.

32. Deny that Plaintiff and John "cooperated" with TDFPS in allowing TDFPS to interview M.D.

Admit that Claridge did not interview M.D. because she believed she did not have Plaintiff's permission to do so. Deny that Plaintiff gave permission to TDFPS prior to M.D. being brought in to have M.D. interviewed. Admit that John brought M.D. to the TDFPS office on September 6, 2019. Deny that John or Plaintiff allowed TDFPS to interview M.D. Deny that Claridge obtained any of M.D.'s medical records at this time, observed M.D. to have a speech and fine motor delay, or discovered at this time he was being treated by a speech pathologist. Admit this was confirmed by TDFPS later but deny that Claridge knew this before M.D.'s removal. Admit that Claridge observed M.D. but did not interview him. Deny that Claridge observed M.D. "freely" or that TDFPS had no evidence of abuse or neglect. Admit that M.D. had his picture taken. Admit that Claridge did not observe any marks or bruising indicative of physical abuse or neglect. Admit that Claridge did not call Plaintiff to ascertain whether she changed her mind about M.D. being interviewed. Deny that Claridge was not concerned about M.D. being in danger.

33. Admit that on September 6, 2019, Claridge spoke to Officer Vasquez in the evening on the phone. Admit that Officer Vasquez told Claridge that he observed Plaintiff without injury. Deny that this was not a domestic violence incident or that "at no point in time" did an argument between John and Plaintiff turn into a physical altercation. Admit that Officer Vasquez told Claridge that he warned John of the consequences of filing a false police report and that John told Officer Vasquez that he injured himself. Admit that Officer Vasquez told Claridge that he thought J.N. and M.D. were with a family friend while Plaintiff and John were away from home. Admit the Officer Vasquez told Claridge that he had no reason to believe Plaintiff had any indication of deceit. Defendants do not have sufficient information at this time to admit or deny the race of the two children observed by Officer Vasquez on the early

morning of August 30, 2019 or whether the children were Natalie Bermea's. Deny that Claridge obfuscated or intentionally skewed information in her affidavit. Defendants do not have sufficient information at this time to admit or deny whether Natalie Bermea's children were the subject of any investigation.

34. Admit that Claridge spoke to officers from Coryell County Sheriff's Office on September 6, 2019. Deny that Claridge obtained statements from credible witnesses that completely refuted the Neglectful Supervision Report. Admit that Claridge did not interview M.D. based on Plaintiff's prohibition. Admit that TDFPS took M.D.'s picture and that Claridge did not observed marks or bruising that indicated abuse or neglect. Admit that Claridge interviewed John and Plaintiff. Admit that Mata was at John's residence on August 30, 2019. Deny that the residence did not "have any safety concerns whatsoever." Deny that any reasonable person would agree that the Neglectful Supervision Report contained false report of child abuse or neglect. Deny that TDFPS petitioned the state court for emergency removal of J.N. and M.D. on September 6, 2019, but admit that TDFPS filed the petition on September 10, 2019. Admit that TDFPS received an Order in Aid of Investigation on September 6, 2019 for both J.N. and M.D. Deny that Claridge intended to harass or cause undue stress and/or harm to Plaintiff and John or that Claridge engaged in a "sham investigation."

35. Deny that J.N. was not also implicated in the investigation of the Neglectful Supervision Report. Admit that Claridge interviewed J.N. at her school on September 6, 2019 pursuant to the Order in Aid of Investigation. Admit that J.N. that she told Claridge she felt safe within the home. Admit that J.N. was 11 at the time of the interview. Admit that per Texas Family Code § 261.311, TDFPS must make a reasonable effort to notify each parent that their child has been interviewed within 24 hours after the interview occurs. Deny that notice must take

place before the interview or "at the time the order is carried out." Deny that Plaintiff and John were not notified of the interview. Admit that Claridge provided the Order in Aid of Investigation to the school before the interview with J.N.

36. Admit that Claridge and Officer Crossman came to John and Plaintiff's residence to notify John and Plaintiff of the interview with J.N. at her school, provide John and Plaintiff with the Order in Aid of Investigation, interview J.N. and M.D. in a private setting, and to observe the home where the children live. Deny that the investigation never involved the residence. Admit that Claridge gave John a complete copy of the Order in Aid of Investigation but that the copy she had made for Plaintiff inadvertently did not include the back side of the double-sided pages. Deny that John did not receive a complete copy of the Order in Aid of Investigation. Admit that Plaintiff was irate. Deny that the Defendants infringed on anyone's privacy or harassed anyone. Admit that Plaintiff "not so kindly asked [Claridge] to leave." Admit that John and Plaintiff refused to let Claridge and Officer Crossman in the residence or let J.N. and M.D. be interviewed. Deny the Claridge lied about an intention to remove J.N. and M.D. from the residence. Deny that Claridge misrepresented her presence at the residence.

37. Admit that John and Claridge spoke on the phone on September 7, 2019. Admit that Officer Vasquez told Claridge that, after talking to Plaintiff, John had then recanted his statements about the violence occurring. Deny that children were not present during any "divorce disputes." Deny that not a single person has said domestic violence occurred before J.N. or M.D. Admit that Claridge informed John about his and Plaintiff's lack of cooperation. Admit that John informed Claridge that he and Plaintiff would speak with an attorney and Claridge told John she would make a note of this. Deny that John provided any contact information of an attorney so that Claridge could forward anything to an attorney or that he requested any

records. Admit that Claridge would not have been authorized to forward "the entire file" at that time as the investigation was still open. Deny "all the witnesses refuted allegations of domestic violence."

### THE START OF THE VIOLATION OF CONSTITUTIONAL RIGHTS<br>THE FALSE REMOVAL AFFIDAVIT SUBMITTED TO THE STATE COURT<br>JUDGE FROM DANIELLE COLLABORATED WITH BRITTANY AND FELISHA

38. Deny that any reasonable investigator would believe that Mata's Neglectful Supervision Report lacked any factual foundation or that not a single shred of evidence supported the allegations contained therein. Admit that on September 9, 2019, Claridge filed an affidavit supporting an Original Petition for Protection of a Child, for Conservatorship, and for Termination in Suit Affecting the Parent-Child Relationship. Deny that the affidavit was false or that Claridge intentionally or knowingly included false allegations in the affidavit. Admit that **Pl.'s Exhibit A** is a true and correct copy of the affidavit, with applicable redactions. Deny the affidavit contained false statements.

  A. Admit this quotation is contained in the affidavit. *See* **Pl.'s Exhibit A** (Doc. 24-1) at 2–3. Deny that the statements are false, misleading, or made under false pretext. Deny these statements were complete fabrications, a wrongful re-wording or obfuscation of the "call for service", or that Claridge knew the allegation of domestic violence by John was false. Admit that Officer Vasquez investigated the August 30, 2019 police incident. Admit that Officer Vasquez had a conversation regarding the August 30, 2019 incident. Admit that Officer Vasquez told Claridge that John recanted his statement about domestic violence on August 30, 2019. Defendants do not have sufficient information at this time to admit or deny J.N. or M.D. were not present during the August 30, 2019 police incident.

B. Admit this quotation is contained in the affidavit. *See* **Pl.'s Exhibit A** (Doc. 24-1) at 9. Deny that this statement was false or deceptive. Defendants do not have sufficient information at this time to admit or deny that Officer Vasquez told Claridge that the two children were not J.N. or M.D.

C. Admit this quotation is contained in the affidavit. *See* **Pl.'s Exhibit A** (Doc. 24-1) at 17. Deny these statements are false, unsubstantiated or duplications. Deny that Plaintiff has no prior history of the behaviors described by this quotation. Deny there has never been an altercation between Plaintiff and John. Deny that Plaintiff's refusal to allow Claridge to carry out a court-ordered investigation is not "evidence that…J.N. and M.D. were in danger."

D. Admit this quotation is contained in the affidavit. *See* **Pl.'s Exhibit A** (Doc. 24-1) at 17. Deny that this statement is false. Admit that Plaintiff and John came into the TDFPS office on September 6, 2019. Deny that either John or Plaintiff voluntarily cooperated with the investigation at all times.

E. Admit this quotation is contained in the affidavit. *See* **Pl.'s Exhibit A** (Doc. 24-1) at 17. Deny this statement is false. Deny that Plaintiff cooperated with the investigation. Defendants do not have sufficient information at this time to admit or deny that Plaintiff told Claridge that she would not allow J.N. or M.D. to be interviewed until Officer Vasquez verifies that violence occurred in front of J.N. or M.D. Admit that M.D. brought to the TDFPS office on September 6, 2019. Deny that TDFPS had "Plaintiff's permission" to interview M.D. Admit that Claridge did not interview or fully assess M.D. because of Plaintiff's prohibition. Admit that Claridge, after obtaining an Order in Aid of Investigation, interviewed J.N. at school. Deny that J.N. told Claridge

she never witnessed domestic violence. Admit that Claridge observed J.N. and M.D. without marks or bruising to indicate abuse or neglect.

F.   Admit this quotation is contained in the affidavit. *See* **Pl.'s Exhibit A** (Doc. 24-1) at 17. Deny this statement is false. Admit that Claridge eventually interviewed Plaintiff, John, and J.N. Deny that Claridge had interviewed M.D. at this point. Deny that the domestic violence allegation contained in the Neglectful Supervision Report could "easily be ruled out."

G.   Admit this quotation is contained in the affidavit. *See* **Pl.'s Exhibit A** (Doc. 24-1) at 17. Deny this statement is false, a complete fabrication or obfuscation of the events, or that there were never any past domestic violence or abuse allegations that resulted in the removal of J.N. or M.D. Admit that Plaintiff and John had custody of J.N. and M.D. up until this point. Admit that Claridge mentioned that TDFPS was involved in the removal of C.D.

H.   Admit this quotation is contained in the affidavit, but deny it has been quoted verbatim. *See* **Pl.'s Exhibit A** (Doc. 24-1) at 17. Deny this statement is false or untrue. Deny that there was "never a 'domestic violence' incident."

I.   Admit this quotation is contained in the affidavit. *See* **Pl.'s Exhibit A** (Doc. 24-1) at 17. Deny this statement is false or TDFPS found that "the children were safe." Deny that in TDFPS investigations, the "mere possibility" of abuse or neglect does not establish that children are in danger of immediate harm. Deny that there was no evidence of danger to J.N. or M.D. Admit that Claridge observed J.N. and M.D. to be free of any bruises or marks that could indicate abuse or neglect. Deny that there was never a domestic violence incident. Defendants do not have sufficient information at

this time to admit or deny that J.N. or M.D. were not present to witness any domestic violence. Deny that Claridge lied or was unable to complete her investigation. Admit that TDFPS found that the allegation of neglectful supervision of J.N. and M.D. Unable to Determine. Deny that TDFPS' Unable to Determine finding is evidence that Claridge "could not conclude if abuse or neglect ever took place."

J.     Admit this quotation is contained in the affidavit. *See* **Pl.'s Exhibit A** (<u>Doc. 24-1</u>) at 17. Deny this statement is false or untrue, that there was no need to remove the children, or that Claridge did not use reasonable efforts consistent with the physical health and safety of the children to prevent or eliminate the need for removal. Deny that a safety plan was necessary or required at this time. Deny that Claridge refused to forward the Order in Aid of Investigation to John and Plaintiff's attorney. Deny that removing an "alleged perpetrator" from the premises was necessary or required based on these circumstances. Defendants do not have sufficient information at this time to admit or deny that Claridge did not explain to Plaintiff the consequences of her non-cooperation. Deny that Plaintiff was the only alleged perpetrator. Deny that John's residence in Iraq prevented domestic violence incidents that may have occurred when he returned home. Deny that there was no need for the children to be removed.

39.  Admit that TDFPS petitioned the state court for emergency removal order on September 9, 2019. Deny that Claridge's affidavit in support of the petition was based on false or misleading statements or the omission of other key facts. Admit that Judge Mabry granted TDFPS' petition on September 9, 2019 which granted TDFPS temporary managing conservatorship of J.N. and M.D. Deny that TDFPS received the signed order on September 9, 2019. Deny there was no emergency.

40. Deny that C.D. was the aggressor in the events leading up to her removal. Deny Plaintiff's characterization and description of the physical altercation contained in sentences 2–4. Admit that Claridge included the quoted language in her affidavit. *See* **Pl.'s Exhibit A** (Doc. 24-1) at 17. Deny Claridge included this language intending to deceive the court or that the language contains false, misleading, or omitted information. Admit that the federal district court in *James v. Walker-Smith* held the quoted language. Deny that the operating facts underlying the *James v. Walker-Smith* decision apply to the current lawsuit. Deny that an actionable claim under § 1983 for the violation of the 14th Amendment exists.

41. Admit that TDFPS removed J.N. and M.D. on September 11, 2019. Deny that it had been two full days since TDFPS obtained a copy of the signed order of removal. Admit that TDFPS came to Plaintiff and John's residence to inform them of the Order for Removal and Notice of Hearing, but deny that it occurred on September 11, 2019 (it occurred on September 10, 2019). Admit that Claridge informed Plaintiff and John of the consequences of not cooperating with the Order in Aid of Investigation. Deny that Plaintiff received untimely notice of the hearing.

42. Deny that Mata or Claridge created "false facts." Admit that Plaintiff contacted TDFPS to discuss the case on September 12, 2019 and that Hemenway spoke to Plaintiff on occasion but Defendants do not have sufficient information at this time to admit or deny that that Plaintiff spoke to Hemenway on September 12, what they discussed, if they discussed TDFPS policy, or if Hemenway gave Plaintiff Rodriguez's contact information. Deny that the Neglectful Supervision Report contained intentionally false allegations. Deny that refusing to cooperate with a court-ordered Order in Aid of Investigation is "not a reason to remove J.N. and M.D.." Deny that the only time domestic violence rises to the level of child abuse is if it

occurs within the close proximity of a child.

43. Defendants do not have sufficient information at this time to admit or deny that John left for Iraq on September 15, 2019, what John told TDFPS regarding his willingness to quit his job, or why he had to return.

44. Defendants do not have sufficient information at this time to admit or deny that the Order of Protection Hearing scheduled for September 16, 2019 had to be continued or the reason for the continuance. Admit that the state court continued the emergency order until October 2, 2019. Admit that the CASA Report to the Court concerning J.N. and M.D. was filed with the court on September 26, 2019. Admit that TDFPS found Unable to Determine regarding the Neglectful Supervision Report. Deny that the Unable to Determine finding conclusively proves that J.N. and M.D. were never in immediate danger.

45. Admit that the rescheduled Order for Protection Hearing occurred on October 2, 2019. Admit that Officers Burgan and Vasquez testified. Deny that the only "real testimony" was that of Officers Burgan and Vasquez. Deny that Officer Burgan testified that domestic violence did not happen on August 30, 2019.  Admit that Officer Vasquez testified that he believed no domestic violence actually occurred. Admit that the state court entered another order extending the emergency order until October 30, 2019. Admit that Sheldon Nold is J.N.'s biological father and that J.N. was initially placed with Nold. Deny that Plaintiff was "[t]he only alleged perpetrator."

46. Admit that Plaintiff had a conversation via phone with Rodriguez on October 11, 2019. Deny that Rodriguez "agreed to review the case." Admit that Rodriguez discussed the case with Plaintiff. Deny that Mata altered or omitted information or made false statements about the bruising on John's face. Defendants do not have sufficient information at this time to admit

Case 6:21-cv-00924-ADA-JCM   Document 27   Filed 07/08/22   Page 21 of 28

or deny whether Plaintiff sent photos of her face. Deny that Rodriguez or any reasonable person could determine the investigation was based on a false premise. Deny that Rodriguez engaged in, or was aware of, any "sham investigation." Admit that Rodriguez approved the filing of the state court petition for removal of J.N. and M.D., but deny that Rodriguez had any concerns about the affidavit's contents. Deny that J.N. and M.D. were removed for "no lawful reason."

47. Defendants do not have sufficient information at this time to admit or deny whether John resigned from his overseas job on October 17, 2019.

48. Admit that on October 22, 2019, TDFPS amended its petition to request termination of Nold's parental rights over J.N.

49. Admit that on October 30, 2019, the state court held another hearing. Deny that Plaintiff was "character assassinated." Deny Claridge intended to deceive the court or "continued the charade" through her testimony. Deny that Claridge lied. Admit C.D. was the subject of some of the testimony. Admit that Claridge testified that TDFPS removed J.N. and M.D. because Plaintiff and John refused to cooperate with the Order in Aid of Investigation. Admit that, because of Plaintiff and John's refusal, TDFPS issued a finding of Unable to Determine regarding the allegations in the Neglectful Supervision Report. Admit that J.N. or M.D. were not directly implicated in the investigation regarding C.D. Deny that Claridge's reference to the incident as "domestic violence" was a lie or was false. Admit that Claridge testified that there were two different stories on whether domestic violence occurred. Deny that "at no point" did John or Plaintiff state that domestic violence occurred. Deny that TDFPS intended to deceive the court based on any alleged falsehoods. Deny that TDFPS employees lied in any court hearings.

Civil Action No. 6:21-CV-00924
*Defendant's Original Answer to Plaintiff's First Amended Complaint*                                    21

50. Admit that Plaintiff filed a request with the state court for a de novo hearing on November 4, 2019. Deny that the date of the hearing was set by TDFPS.

51. Admit that a portion of the de novo hearing occurred on February 6, 2020. Deny that Mata was removed as conservatorship worker for C.D. because Mata intentionally altered or tampered with Plaintiff's court-ordered drug tests. Deny that Plaintiff's missed drug tests that were "considered positive" were in any way the fault of Mata. Deny that Mata lied about Plaintiff's psychological evaluation.  Defendants do not have sufficient information at this time to admit or deny whether Mata testified during the February 6, 2020 hearing or that she testified to anything pertaining to M.D. or J.N.'s case. Deny that Mata intentionally or maliciously attempted to remove custody of J.N. or M.D. from Plaintiff. Admit that, at the end of the hearing, the second portion of the hearing was scheduled.

52. Defendants do not have sufficient information at this time to admit or deny that on February 19, 2020, the second portion of the de novo hearing occurred., whether Claridge testified on February 19, 2020, or the subject of her alleged testimony. Admit that temporary managing conservatorship was again granted to TDFPS on March 6, 2020.

53. Admit that on March 4, 2020, a permanency hearing occurred where the state district court determined that visitation between the children and Plaintiff had to be supervised and that Plaintiff had to take certain steps in order to have that level of supervision reduced. Admit that Plaintiff was permitted to have an extended visit with M.D. in the home she shared with John but that Plaintiff could not be alone with the child for longer than 30 minutes at a time and only for carpooling purposes. Admit that J.N. was also permitted to visit Plaintiff and John over spring break with similar restrictions. Defendants do not have sufficient information at this time to admit or deny that these visits had "no concerns" that being returned to Plaintiff

had a positive impact on M.D., or that M.D. self-injured himself. Admit that a psychiatrist diagnosed him with an adjustment disorder. Admit that M.D. had been placed in three foster homes.

54. Admit that on July 27, 2020, mediation occurred between the parties, an agreement was reached concerning M.D., and Plaintiff and John obtained custody of M.D. Admit that an agreement was not reached regarding J.N. Defendants do not have sufficient information at this time to admit or deny whether a therapist recommended J.N. be returned to Plaintiff and John or whether J.N.'s ad-litem told the judge that J.N. wanted to be returned to Plaintiff. Deny that there was no need for any protection for J.N.

55. Admit that on August 25, 2020, TDFPS non-suited their claims against Plaintiff, John, and Nold and that the court granted the order of non-suit on August 26, 2020.  Admit that Plaintiff sought custody of J.N., but Defendants do not have sufficient information to admit or deny whether Plaintiff filed anything on August 27, 2020. Admit that the final divorce decree gave joint managing conservatorship to Plaintiff over J.N. Plaintiff. Deny that the divorce decree gave Plaintiff full custody of J.N.

56. Deny that Plaintiff "did nothing wrong," or that any Defendant acted unconstitutionally. Admit that Hemenway and Rodriguez knew that Plaintiff and John's story was that John recanted his statements about domestic violence occurring on August 30, 2019. Deny that Rodriguez was a Regional Supervisor (she was a Program Director). Deny that both Hemenway and Rodriguez affirmatively knew that no domestic violence occurred. Deny that Hemenway or Felisha supervised Mata.

## IV.   COUNT 1 – VIOLATION AND DEPRIVATION OF THE RIGHT TO FAMILY INTEGRITY UNDER THE FOURTEENTH AMENDMENT (AGAINST ALL DEFENDANTS AND DOES 1-10, INCLUSIVE)

57. Defendants reincorporate the admissions and/or denials contained in paragraphs 1–56.

58. Admit that *Troxel v. Granville*, 530 U.S. 57 (2000), held the Due Process Clause of the 14th Amendment protects the fundamental right of parents as to the care, custody, and control of their children. Deny that this fundamental right is unqualified. Admit that *Morris v. Dearborne*, 181 F.3d 657, 667 (5th Cir. 1999) quoted *Stanley v. Illinois*, 405 U.S. 645, 651 (1972) in that the right to conceive and raise one's children is essential. Admit that *Hodorowski v. Ray*, 844 F.2d 1210, 1216 (5th Cir. 1988) held that the right of the family to remain together without coercive state interference is also essential. Deny that the Defendants violated Plaintiff's 14th Amendment rights.

59. Deny.

## V.   COUNT 2 – VIOLATION AND DEPRIVATION OF PROCEDURAL DUE PROCESS UNDER THE FOURTEENTH AMENDMENT (AGAINST ALL DEFENDANTS AND DOES 1-10, INCLUSIVE)

60. Defendants reincorporate the admissions and/or denials contained in paragraphs 1–59.

61. Admit that the right to procedural due process protects deprivations of a liberty or property interests without constitutional due process. Admit that procedural due process can be implicated when the government seeks to alter a parent's custody of their child. Deny Plaintiff was not afforded proper constitutional due process. Deny that the Defendants violated Plaintiff's 14th Amendment rights.

62. Deny.

63. Admit that Claridge's affidavit contained this quotation. *See* **Pl.'s Exhibit A** (Doc. 24-1) at 17. Deny that Plaintiff or John were deprived of procedural due process. Deny that the Defendants violated Plaintiff's 14th Amendment rights.

64. Deny that Plaintiff or John were deprived of procedural due process. Deny that the

Defendants violated Plaintiff's 14th Amendment rights.

65. Admit *Napue v. Illinois*, 360 U.S. 264, 269 (1959) contains the quoted language. Deny that the quoted language in *Napue* is applicable to this case. Deny the rest of the paragraph. Deny that Plaintiff or John were deprived of procedural due process. Deny that the Defendants violated Plaintiff's 14th Amendment rights.

## VI.   COUNT 3 – VIOLATION OF SUBSTANTIVE DUE PROCESS UNDER THE FOURTEENTH AMENDMENT (AGAINST ALL DEFENDANTS AND DOES 1-10, INCLUSIVE)

66. Defendants reincorporate the admissions and/or denials contained in paragraphs 1–65.

67. Deny that the Defendants violated Plaintiff's substantive due process rights. Admit that J.N. was placed with Nold. Admit that M.D. was placed in more than one foster home. Admit that M.D. was in TDFPS custody from September 11, 2019 until at least March 4, 2020. Deny that TDFPS still retains temporary managing conservatorship over J.N.

68. Admit that *Romero v. Brown*, 937 F.3d 514, 523 (5th Cir. 2019) contains the quoted language. Deny that *Romero* is applicable to this case. Deny that the Defendants violated Plaintiff's substantive due process rights

69. Admit that *Romero v. Brown* contains the quoted language. Deny that *Romero* is applicable to this case. Deny that the Defendants violated Plaintiff's substantive due process rights

70. Admit that *Morris v. Dearborne* contains the quoted language. Deny the rest of the paragraph. Deny that the Defendants violated Plaintiff's substantive due process rights

71. Admit that *Winfrey v. Rogers*, 901 F.3d 483, 494 (5th Cir. 2018) contains the quoted language. Deny *Winfrey* is applicable to this case. Deny that Mata was involved in approving or requesting the removal of M.D. or J.N. Deny the rest of the paragraph. Deny that the Defendants violated Plaintiff's substantive due process rights.

72. Admit that M.D. was in TDFPS custody from September 11, 2019 until at least March 4, 2020. Deny that TDFPS still retains temporary managing conservatorship over J.N. Deny that Mata submitted an affidavit.  Deny the rest of the paragraph. Deny that the Defendants violated Plaintiff's substantive due process rights.

73. Admit that *Marks v. Hudson*, 933 F.3d 481, 487 (5th Cir. 2019) contains the quoted language. Deny *Marks* are applicable to this case. Deny the rest of the paragraph. Deny that the Defendants violated Plaintiff's substantive due process rights.

74. Admit that M.D. was in TDFPS custody from September 11, 2019 until at least March 4, 2020. Deny that TDFPS still retains temporary managing conservatorship over J.N. Deny the rest of the paragraph. Deny that the Defendants violated Plaintiff's substantive due process rights.

75. Deny.

76. Deny.

## VII.   PRAYER

1. Deny.

2. Deny.

3. Deny.

4. Deny.

5. Deny.

## VIII.   JURY DEMAND

1. Admit.

## DEFENSES

Further, the Defendants assert the following defenses:

1. Defendants in their individual capacities assert qualified immunity to suit, as to any and all

claims to which those defenses may apply.

2.  Defendants in their individual capacities assert qualified immunity to liability, as to any and all claims to which those defenses may apply.

3.  Defendants assert that Plaintiff has failed to state a claim for which relief may be granted under 42 U.S.C. § 1983.

4.  Defendants plead that they acted in good faith without malice, willfulness or intent.

5.  Defendants plead that their conduct, if any, was based upon legitimate, non-discriminatory, and non-retaliatory reasons.

6.  Plaintiff has failed to mitigate her damages, to the extent she has any.

7.  Defendants assert the affirmative defense of limitations for any claims outside the applicable limitations period.

8.  Defendants reserve the right to add additional defense as they become known.

**DATED**:      July 8, 2022                 Respectfully submitted.


KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

GRANT DORFMAN
Deputy First Assistant Attorney General

SHAWN COWLES
Deputy Attorney General for Civil Litigation

CHRISTOPHER D. HILTON
Chief for General Litigation Division

*/s/ John Daniel Coolidge*
JOHN DANIEL COOLIDGE
Attorney-in-Charge
Texas Bar No. 24113693

---

Assistant Attorney General
General Litigation Division
Office of the Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Telephone (512) 475-4072
Facsimile: (512) 320-0667
daniel.coolidge@oag.texas.gov

**COUNSEL FOR DEFENDANTS**

**CERTIFICATE OF FILING AND SERVICE**

On July 8, 2022, the undersigned attorney filed the foregoing document with the Clerk of the

Court for the Western District of Texas and served a true and correct copy of the foregoing to all

counsel of record in compliance with the Federal Rules of Civil Procedure.

**Edward A. Rose, Jr., Esq.**
Texas Bar No. 24081127
Attorney-in-Charge
Edward A. Rose, Jr., P.C.
3027 Marina Bay Drive Suite 208
League City, Texas 77573
T: (713) 581-6029
F: (832) 201-9960
edrose@edroseattorneycpa.com

**Kent Motamedi**
Texas Bar No. 24107233
Attorney at Law
Motamedi Law, PLLC
State of Texas Bar 24107233
952 Echo Lane, Suite 320
Houston, Texas 77024
T: (832) 582-5867
kent@motamedilaw.com

**ATTORNEYS FOR PLAINTIFF**

_/s/ John Daniel Coolidge_
JOHN DANIEL COOLIDGE
Assistant Attorney General