## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | | |
|---|---|---|
| **TIFFANY BISSELL,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CASE NO. 6:21-CV-00924-ADA-DTG** |
| | § | |
| **ELAINE MATA, et al.,** | § | |
| | § | |
| **Defendants.** | § | |
| | § | |

## REPORT AND RECOMMENDATION GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF NO. 57) AND DENYING PLAINTIFF'S (ECF NO. 58)

**TO:   THE HONORABLE ALAN D ALBRIGHT,**
**UNITED STATES DISTRICT JUDGE**

This Report and Recommendation is submitted to the Court pursuant to 28 U.S.C. § 636(b)(1)(C), Fed. R. Civ. P.  72(b), and Rules 1(d) and 4(b) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges. Before the Court are Defendants Elaine Mata, Danielle Claridge, Brittany Henway, and Felisha Rodriguez's Motion for Summary Judgment (ECF No. 57), Plaintiff Tiffany Bissell's Motion for Summary Judgment (ECF No. 58), and the defendants' Motion to Exclude Angela M. Jourdain's Testimony (ECF No. 62).

After carefully considering the briefs and the applicable law, the Court **RECOMMENDS** that the defendants' Motion for Summary Judgment be **GRANTED**, the plaintiff's Motion for Summary Judgment be **DENIED**, and the defendants' Motion to Exclude be **DENIED-AS-MOOT**.

# I.    BACKGROUND

This case involves the temporary removal of Plaintiff Tiffany Bissell's children by four Texas Department of Family and Protective Services employees. The plaintiff is the biological mother of two minor children—M.D. and J.N. ECF No. 51 ¶¶ 13–16. The plaintiff is married to John Dumdie and is the stepmother of C.D., Mr. Dumdie's daughter. *Id.* The defendants are employees of the Texas Department of Family and Protective Services. *Id.* ¶¶ 5–8. On March 5, 2019, the Texas Department of Family and Protective Services investigated an altercation between the plaintiff and C.D. *Id.* ¶ 13. The plaintiff asserts that C.D. assaulted her, forcing the plaintiff to take defensive action to protect herself. *Id.* As a result of the investigation, the plaintiff was required to participate in "family services." *Id.* Less than two months later, the Texas Department of Family and Child Services removed C.D. from the plaintiff's home because the plaintiff refused to assume parental responsibility. *Id.* ¶ 14. While removal of C.D. is not at issue in this case, it provides the background about how the plaintiff became involved with the defendants.

On September 3, 2019, after Defendant Elaine Mata conducted a home visit, Defendant Mata filed a report alleging that the plaintiff was neglectfully supervising M.D. *Id.* ¶¶ 23–25. Defendant Mata was concerned that the plaintiff's violent behavior posed a danger to M.D. ECF No. 60 (Investigation Report, DFPS-00001–00012). Defendant Mata explained that the plaintiff was the aggressor in a domestic violence dispute involving Mr. Dumdie, even though Defendant Mata was aware Mr. Dumdie had recanted his reports of the plaintiff's violence against him. *Id.* Defendant Mata also explained in her report that the plaintiff had a history of aggression and physical altercations with C.D. *Id.*

Defendant Danielle Claridge investigated the neglectful supervision report against the plaintiff. ECF No. 51 ¶ 27. Defendant Claridge received records from the Coryell County Sheriff's Office. Those records showed that Mr. Dumdie made and later recanted reports about the plaintiff's violence corroborating Defendant Mata's concerns of domestic violence. ECF No. 60 (Investigation Report, DFPS-00009–00011). Defendant Claridge filed an affidavit for removal of J.N. and M.D. *Id.* (Affidavit, DFPS-00060–00076). On September 10, 2019, Judge Mabray of the Coryell County Court signed an order to remove J.N. and M.D. from the plaintiff's home after reviewing Defendant Claridge's affidavit. *Id.* (Investigation Report, DFPS-00023). Following the court order, J.D. and M.D. were temporarily removed from the plaintiff's home. ECF No. 51 ¶ 67. The allegation of neglectful supervision was ultimately dismissed because the allegation was unable to be determined. *Id.* (Investigation Report, DFPS-00002).

Based on this conduct, the plaintiff sued Defendants Elaine Mata, Danielle Claridge, Brittany Henway, and Felisha Rodriguez under 42 U.S.C. § 1983 for violating her Fourteenth Amendment right to family integrity, substantive due process, and procedural due process. ECF No. 51.

## II.    LEGAL STANDARD

Both the plaintiff and the defendants move for summary judgment arguing that they are entitled to judgment as a matter of law because there is no genuine dispute as to any material fact. The familiar standard for summary judgment applies to both motions. A court must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Meadaa v. K.A.P. Enters., LLC*, 756 F.3d 875, 880 (5th Cir. 2014). If the plaintiff is the movant, the plaintiff "must establish beyond peradventure *all* of the essential elements of the claim to

warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original). Substantive law determines which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.*

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets this burden, the nonmoving party must come forward with specific facts that establish a genuine issue for trial. *Distribuidora Mari Jose, S.A. de C.V. v. Transmaritime, Inc.*, 738 F.3d 703, 706 (5th Cir. 2013) (quoting *Allen v. Rapides Par. Sch. Bd.*, 204 F.3d 619, 621 (5th Cir. 2000)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Hillman v. Loga*, 697 F.3d 299, 302 (5th Cir. 2012).

### III.     ANALYSIS

The plaintiff moves for summary judgment on her claims, asserting that the undisputed facts conclusively establish every element of her claims. Conversely, the defendants move for summary judgment in their favor on all claims because the defendants assert that they are entitled to qualified immunity. Qualified immunity alters the usual summary judgment burden of proof—once a defendant raises the defense, the burden shifts to the plaintiff to demonstrate that the defendant is not entitled to qualified immunity. *Batyukova v. Doege*, 994 F.3d 717, 724 (5th Cir. 2021). Qualified immunity "protects all but the plainly incompetent and those who knowingly violate the law." *Ashcroft v. Al-Kidd*, 563 U.S. 731, 743 (2011) (citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

To survive the defendants' motion for summary judgment, the plaintiff must establish that the defendants are not entitled to qualified immunity. This requires the plaintiff to satisfy a two-part test. *See id.* at 735 (noting that courts have discretion to decide which of the two parts to analyze first when deciding whether a plaintiff has overcome the defense of qualified immunity). First, the plaintiff must establish that the facts when taken in a light most favorable to her show that the defendants' conduct violated a federal constitutional or statutory right. *Id.* Second, the plaintiff must establish that the defendants' conduct was objectively unreasonable considering the clearly established law at the time of incident. *Id.*

A.     **Qualified immunity protects the defendants from the plaintiff's right to family integrity claim because the right is not clearly established under the facts of this case.**

The plaintiff alleges that the defendants violated a recognized constitutional right known as the right to family integrity. ECF No. 51 at 25. In 1972, the Supreme Court recognized that the right to family integrity is a substantive right guaranteed by the due process clause of the Fourteenth Amendment. *Morris v. Dearborne*, 181 F.3d 657, 671 (5th Cir. 1999) (citing *Stanley v. Illinois*, 405 U.S. 645 (1972)). This right, however, is not absolute—it is offset by the right of the state to take temporary custody of children to guarantee their safety. *Id.* at 669 (acknowledging that the relationship between parent and child is afforded constitutional protection only in "appropriate cases" (citing *Stanley*, 405 U.S. at 656 (noting that neglectful parents may be separated from their children)). The right cannot be absolute because child-protective workers, like the defendants, often "must make on-the-spot decisions about whether to remove a child from a dangerous environment or whether, on the other hand, to make the

judgment call that the child is in no danger and should remain with his family." *Roe v. Tex. Dep't of Protective & Regulatory Servs.*, 299 F.3d 395, 410–11 (5th Cir. 2002).

Because of this tension, the Fifth Circuit has held that the right to family integrity is not always clearly established. *Dearborne*, 181 F.3d at 671 (providing qualified immunity, rather than, absolute immunity to child protective services workers); *see also Hall v. Dixon*, No. H-09-2611, 2010 WL 3909515, at *22 (S.D. Tex. Sept. 30, 2010) (noting that Fifth Circuit precedent rejects the plaintiff's assertion that the right to family integrity is always clearly established). This is why cases alleging government interference with the right to family integrity must be placed "along a continuum between the state's clear interest in protecting children and a family's clear interest in privacy." *Dearborne*, 181 F.3d at 671. A defendant is entitled to qualified immunity when the facts of a case place it "in the center of the continuum where the two interests overlap and create a tension." *Id.* When a case falls in the center of the continuum, the right to family integrity is "nebulous." *Id.*

The defendants are entitled to qualified immunity because the Court finds that the facts of this case place it at the center of the continuum where the right to family integrity is not clearly defined. The Fifth Circuit's precedent in a string of cases involving child protective services workers guides the Court's analysis here. As explained above, the right to family integrity is a legally recognized substantive due process right, but whether the contours of that right are clearly established depends on a fact intensive review of each case. As the Fifth Circuit has explained, a plaintiff's ability to defeat qualified immunity for a family integrity claim hinges on "the degree of fit between the facts of this case" and the Fifth Circuit's prior opinions. *Romero v. Brown*, 937 F.3d 514, 520 (5th Cir. 2019) (citations omitted). As explained below, that fit is lacking in this case.

We begin this analysis with *Hodorowski v. Ray*. In that case, the plaintiffs sued Texas Department of Human Services officials for taking their children without a court order. 844 F.2d 1210, 1214 (5th Cir. 1988). The children were removed after the officials received a report that their father reportedly chased the children around the yard with a chain. *Id.* at 1217. The defendant child protective workers observed bruising on the children, which were consistent with the allegations in the report. *Id.* The Fifth Circuit held that the child protective workers were entitled to qualified immunity because the right to family integrity was not clearly established under those facts. *Id.* at 1217.

Several years later, the Fifth Circuit applied the *Hodorowski* analysis to another case— *Doe v. Louisiana*. In *Doe*, the plaintiff sued Louisiana child protective workers, claiming various violations of the plaintiff's Fourteenth Amendment right to family integrity. *Doe v. Louisiana*, 2 F.3d 1412, 1415 (5th Cir. 1993), *cert denied*, 510 U.S. 1164 (1994). Much like Ms. Bissell, the plaintiff in *Doe* alleged that the defendants withheld and ignored exculpatory evidence and made misrepresentations to the mother and two judges. *Id.* at 1415 (majority opinion). The *Doe* case was particularly egregious. The complaint alleged "nightmarish" conduct by two child protective workers during four-month "witch hunt." *Id.* at 1421. (King, J., concurring). The two workers allegedly suppressed reports indicating that no sexual abused occurred, misrepresented the nature of the finding in those reports, secretly obtained a court order awarding custody of Doe's son to his mother, and provided false information to the District Attorney's office to have the children removed from their grandparents' temporary custody. *Id.* Despite these allegations, the Fifth Circuit held as a matter of law that the child protective workers did not violate a clearly established constitutional right at the time of their conduct. *Id.* at 1418 (majority opinion) (dismissing the plaintiff's right to family integrity claims for failure to state a claim).

Similarly in *Kiser v. Garrett*, the Fifth Circuit held that the child protective workers were protected by qualified immunity because the right to family integrity was not clearly established under the facts of that case. 67 F.3d 1166, 1167 (5th Cir. 1995). In *Kiser*, like this case and the *Doe* case, the children were temporarily removed from their home and later returned to their parents. *Id.* at 1169. The Kisers alleged that the defendants withheld exculpatory evidence, gave false testimony in state court, and continued an investigation after they had knowledge that the parent could not have caused the injury that started the investigation. *Id.* at 1169–71. The *Kiser* court concluded that, "although a substantive due process right to family integrity has been recognized, the contours of that right are not well-defined, and continue to be nebulous, especially in the context of a state's taking temporary custody of a child during an investigation of possible parent abuse." *Id.* at 1173.

This case is similar to the facts of *Doe* and *Kiser*. Ms. Bissell alleged that the defendants temporarily took J.N. and M.D. based on knowingly false allegations of domestic violence and neglect. ECF No. 51 ¶ 59. She further alleges that Defendant Mata knowingly provided false evidence to the state court judge to take J.N. and M.D. and deceive the state court. *Id.* ¶ 59. Defendants Mata and Claridge, with the approval of Hemingway and Rodriguez, allegedly prepared a request for a removal order that included false statements to successfully obtain temporary removal of the plaintiff's children. *Id.* ¶ 71.

Following the Fifth Circuit's guidance in *Hodorowski*, *Doe*, and *Kiser*, the Court finds that the right to family integrity invoked by the plaintiff is not clearly established under these facts and that the defendants are entitled to qualified immunity. The plaintiff has not directed the Court to any controlling authority that would undermine this conclusion. *See Jennings v. Abbott*, 538 F. Supp. 3d 682, 695 (N.D. Tex. 2021) (noting that the Fifth Circuit has not found a clearly

established violation of the right to family integrity in any case against a child welfare worker (collecting cases)). The plaintiff only cites case law stating that the general right to family integrity has been established by the Supreme Court. ECF No. 66 at 21 (quoting *Hodorowski*, 844 F.2d at 1216; citing *Troxel v. Granville*, 530 U.S. 57, 66 (2000)).

Because the right invoked by the plaintiff is not clearly established, the plaintiff fails to defeat qualified immunity at the first part of the test, and the Court will not consider whether the defendants' conduct was objectively reasonable. The undersigned therefore **RECOMMENDS** that the District Court **GRANT** the defendant's motion for summary judgment on the plaintiff's § 1983 claim for the violation and deprivation of her Fourteenth Amendment right to family integrity. Because the defendants are entitled to qualified immunity and the plaintiff has not overcome this protection, the undersigned further **RECOMMENDS** that the Court **DENY** the plaintiff's motion for summary judgment on the same claim.

**B.    Qualified immunity protects the defendants from the plaintiff's substantive due process claims.**

The plaintiff failed to raise a genuine issue about whether the defendants violated the plaintiff's clearly established substantive due process rights. It is unclear from the plaintiff's live complaint and briefing which specific substantive rights the defendants allegedly violated. The only substantive Fourteenth Amendment right that the plaintiff identifies is the right to family integrity, which as discussed above is not clearly defined under these facts. ECF No. 51 at 25. Additionally, the complaint separates the right to family integrity from the plaintiff's substantive due process claims. *See id.* at 25, 27–30 ("Count 1-Violation and Deprivation of The right to family Integrity Under the Fourteenth Amendment" and "Count 3-Violation of SUBSTANTIVE DUE PROCESS Under the Fourteenth Amendment"). The plaintiff asserts that "clear violations

of substantive due process" occur when the removal of the child is for a period of months or years citing *Dearbone* and *Romero* in support. *Id.* ¶ 69.

*Dearborne* is distinguishable because it involved a substantive due process claim for the violations of a child's right to bodily integrity and procedural due process, not a child welfare investigator or the temporary removal of the child. 181 F.3d at 666–67, 671. Ms. Dearborne was a teacher who guided a cognitively disabled child's hand, using a facilitative communicator machine, to produce false allegations that her dad was sexually abusing her. *Id.* at 663. The evidence revealed that Ms. Dearborne created the allegations and there was no credible evidence of sexual assault. *Id.* at 664. The Fifth Circuit explained that unlike child welfare investigators, Ms. Dearborne's primary duty was to teach the child, not to elicit possible instances of abuse. *Dearborne*, 181 F.3d at 671. Explicitly noting the differences between teachers and child protective workers, the court held that the claims fell "within the well-established constitutional right to family integrity and to be free of arbitrary, oppressive governmental action." *Id.*

The plaintiff also cites *Romero v. Brown*, which held that the defendant social worker did not violate the parents' substantive due process right to family integrity when she had all seven of their children removed from their home without a court order. 937 F.3d at 520. The Court found that while the plaintiff's substantive due process claims failed, the parents could plausibly state a claim for procedural due process violations. *Id.* at 521.

The Court cannot determine which substantive due process rights, other than the right to family integrity, that the plaintiff believes the defendants violated and the plaintiff's cited cases do not help identify a substantive due process right. The plaintiff suggests that the mere removal of her children for a period of months constitutes a violation of her substantive due process rights. *See* ECF No. 51 at 27–28 ("'Cases since have found [*11] clear violations of substantive

due process only when the removal measured in months or years.' *Romero*, 937 F.3d at 521"
(citing Romero, 937 F.3d at 918; *Dearborne*, 181 F.3d at 671; *Wooley v. City of Baton Rouge*,
211 F.3d 913, 918 (5th Cir. 2000))). That is not what the Fifth Circuit has held.

      *Wooley* involved a lawsuit against two officers for the alleged violation of a caregiver's
fourth amendment rights against unreasonable searches and seizures and her fourteenth
amendment right to family integrity. The caregiver was the child's legal guardian at the request
of the child's mother. *Wooley v. City of Baton Rouge*, 211 F.3d 913, 917 (5th Cir. 2000). The
child's grandparents obtained a court order giving the grandparents temporary custody of the
child, but the order did not direct law enforcement officers to effectuate the transfer of custody.
*Id.* Despite that, two police officers knocked on the caregiver's door and demanded that she give
the child over to the officers. *Id.* The officers told the caregiver that they were instructed to take
the child and denied the caregiver's request to call her lawyer or the child's mother. *Id.* at 917–
18. The Fifth Circuit affirmed the district court's order granting the defendant officers qualified
immunity from the plaintiffs claim that she was deprived of the right to custody of the child
without due process of law. *Id.* at 924. The court found that the right to family integrity was not
clearly defined, but the plaintiff did enjoy a clearly established right to maintain her relationship
free from interference by state actors. *Id.* at 920, 924. The court explained that the suit was
against police officers who were not investigating the child's welfare. *Id.* The court distinguished
*Wooley* from cases involving child-protective workers, noting that there was no indication in the
record that any threat to the child's safety, nor were the officers investigating allegations that the
child was abused by the caregiver or his mother. *Id.* Because *Wooley* is distinguishable from the
facts of this case, *Wooley* does not establish that the plaintiff was entitled to maintain her
relationship free from inference by the defendants.

The Court finds that the plaintiff has not alleged nor provided any evidence that the defendants violated a clearly defined substantive due process right of hers. Accordingly, the defendants are entitled to qualified immunity from her § 1983 substantive due process claims. The undersigned therefore **RECOMMENDS** that the District Court should **GRANT** the defendants' motion for summary judgment on the plaintiff's § 1983 substantive due process claims and **DENY** the plaintiff's motion for summary judgment on the same claims.

**C.    The summary judgment evidence establishes that the plaintiff received adequate due process.**

The Court finds that the removal of the plaintiff's children did not violate her clearly defined procedural due process rights. Instead, the summary judgment evidence establishes that, as a matter of law, the plaintiff received adequate due process.

**1.    The removal of J.N. and M.D. did not violate the plaintiff's substantive due process rights.**

The plaintiff argues that the seizures of J.N. and M.D. violated her procedural due process rights. Before a parent can be deprived of her fundamental liberty interest in the care, custody, and management of her child, the parent is entitled to due process of law. *See Romero*, 937 F.3d at 521 (collecting cases establishing that the Constitution requires the state to follow certain procedures before encroaching on fundamental parental rights). The plaintiff's procedural due process claim is based on her allegation that her Fourth Amendment rights were violated when J.N. and M.D. were seized from her custody and care without due process of law. ECF No. 51 ¶ 61. This reasoning is fundamentally flawed for two reasons.

First, the plaintiff's Fourth Amendment rights are not implicated here. Only children that have been seized have standing to bring a Fourth Amendment claim. *Romero*, 937 F.3d at 523

(holding that there is no overlap between a child's Fourth Amendment claim and a parent's Fourteenth Amendment due process claim (citing *Gates v. Tex. Dep't of Protective & Reg. Servs.*, 537 F.3d 404, 427 (5th Cir. 2008)). The plaintiff acknowledges this, stating that her "minor children's constitutional right not to be seized under the Fourth (4th) Amendment" is clearly established. ECF No. 58 at 18. The plaintiff, however, does not bring a Fourth Amendment claim on behalf of M.D. or J.N.

Nevertheless, a parent who loses control of her child may assert a due process right, as the plaintiff has done. *Id.* The Court will only consider the plaintiff's procedural due process rights. To the extent the plaintiff attempts to make out a *Franks* violation, the Court will not consider such a claim because a *Franks* violation is a Fourth Amendment claim. *See* ECF No. 51 at 25 (citing *Franks v. Delaware*, 438 U.S. 154 (1978)).

Second, the summary judgment evidence establishes that the plaintiff received due process. The plaintiff argues that she was entitled to "notice and a hearing <u>before</u>" J.N. and M.D. were removed. ECF No. 51 ¶ 61 (emphasis in original). But it is "clearly established that a court order or exigency is the predeprivation process that is due when social workers remove a child." *Romero,* 937 F.3d at 522 (citing *Gates*, 537 F.3d at 434; *Wernecke v. Garcia*, 591 F.3d 386, 391 n.7 (5th Cir. 2009)). When a child is removed due to exigency, a timely post-deprivation hearing is required under the Due Process Clause. *Id.* at 522 n.2 (collecting cases where courts have found no due process violations because exigent circumstances supported removal and hearing was promptly held after the seizure). But here, the judge signed an order of removal two days before J.N. and M.D. were removed from the plaintiff's custody. ECF No. 51 ¶ 64.

The plaintiff was not entitled to notice and a hearing before J.N. and M.D. were temporarily removed from her home. Because the court order was signed two days before J.N.

and M.D. were removed, the summary judgment evidence establishes that the plaintiff was given adequate due process. The fact that Defendants Claridge and Mata allegedly lied at the post-deprivation hearings does not establish that the plaintiff was deprived of her due process rights. *See Stem v. Ahearn*, 908 F.2d 1, 6 (5th Cir. 1990) (holding that a social worker's adverse judicial testimony offered at a child-custody hearing does not implicate due process concerns, instead "it constitutes witness testimony that is absolutely immune from section 1983 liability" (citing *Briscoe v. LaHue*, 460 U.S. 325, 342–47 (1983)).

**2.    The removal of C.D. did not violate the plaintiff's procedural due process rights.**

Finally, to the extent that the plaintiff attempts to argue that the removal of C.D. without a court order violated her procedural due process rights, this argument fails because the plaintiff has not established that she has standing to bring a procedural due process claim based on the removal of C.D. *See Franks v. Smith*, 721 F.2d 153, 155 (5th Cir.1983) (holding that the relationship between a child and his non-biological caregivers was "emotional only" and insufficient to create a familial expectation that society and the Constitution recognize). The plaintiff has not offered evidence that she has a legally recognized relationship with C.D. *See* ECF No. 58-12 (Bissell Aff. at 1:26–2:2) (stating that the plaintiff has no legal relationship with C.D.). Additionally, the plaintiff and her husband no longer communicate with C.D. because Mr. Dumdie has no interest in continuing the parent-child relationship. ECF No. 51 ¶ 15. The Court finds that there is no legal relationship between the plaintiff and C.D. that would allow the plaintiff to base her procedural due process claims on the removal of C.D.

The Court finds that the summary judgment establishes that the plaintiff received adequate due process. The undersigned therefore **RECOMMENDS** that the Court **DENY** the

plaintiff's motion for summary judgment on her § 1983 procedural due process claims. The plaintiff has not conclusively established that the defendants violated her procedural due process rights. *See Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (a plaintiff is entitled to summary judgment on her claim when the plaintiff conclusively establishes all of the essential elements of the claim to warrant judgment in his favor"). The undersigned further **RECOMMENDS** that the defendants' motion for summary judgment be **GRANTED** because there is no genuine dispute that the plaintiff's procedural due process rights were violated.

**D.    Exhibits A, B, and E are not competent summary judgment evidence.**

The defendants object to five exhibits to the plaintiff's motion for summary judgment—Exhibits A, B and E, Ms. Bissell's Declaration, and the Expert Report of Angela Jourdain. ECF No. 67. Exhibit A is an email from a Texas Department of Family and Protective Services employee, Shanna Schuelke, to a State Senator's office regarding the investigation of the domestic violence concerns against the plaintiff. ECF No. 58-1. Exhibit A contains hearsay. Hearsay is a statement made outside the current trial or hearing that is offered for its truth. Fed. R. Evid. 801(c). Hearsay is not admissible unless an exception applies. Fed. R. Evid. 802; *see also State Farm Fire & Cas. Co. v. Amazon.com, Inc.*, 525 F. Supp. 3d 753, 755 (N.D. Miss. 2021) (noting that the hearsay rule applies to summary judgment evidence with equal force (citation omitted)). The plaintiff does not identify any applicable exception that applies to Exhibit A. *See* ECF No. 69 (arguing only that the email is impeachment evidence). The Court therefore **SUSTAINS** the defendants' objection to Exhibit A.

Exhibits B and E are screenshots that purportedly establish the plaintiff's location on August 27, 2019, and August 29, 2019, respectively. ECF Nos. 58-3 & 58-5. The authenticity of these screenshots has not been established. There is no way for the Court to determine that the

plaintiff was at the location indicated by the screenshots. Thus, the Court **SUSTAINS** the defendants' objection to Exhibits B and E.

The plaintiff's sworn declaration states that she has personal knowledge of the facts and that she is competent to testify to those facts. ECF No. 58-12. A declaration used to support a motion for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that [. . .] the declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). The plaintiff sets out enough factual support in her declaration to show that she possesses personal knowledge. The Court therefore **OVERRULES** the defendants' objection to the Bissell Declaration.

The defendants assert that the Expert Report of Angela Jourdain is untimely, unreliable and Ms. Jourdain is unqualified to offer expert testimony, citing to the defendants' motion to exclude. ECF No. 67 at 5. The defendants incorporate by reference their motion to exclude Ms. Jourdain's testimony and offer no independent argument establishing that the expert report is not competent summary judgment evidence. The Court therefore **OVERRULES** the defendants' objection to the expert report. The Court makes no ruling on the merits of the defendants' *Daubert* motion—the Court holds only that the expert report is considered as part of the summary judgment record.

## IV.    CONCLUSION

The undersigned **RECOMMENDS** that the defendants' motion for summary judgment (ECF No. 57) be **GRANTED** as to all of the plaintiff's claims and the plaintiff's cross-motion for summary judgment (ECF No. 58) be **DENIED** in its entirety. In light of these recommendations—seeing as there are no claims remaining—the undersigned further

**RECOMMENDS** that the defendant's motion to exclude (ECF No. 62) be **DENIED-AS-MOOT**.

## V.    OBJECTIONS

The parties may wish to file objections to this Report and Recommendation. Parties filing objections must specifically identify those findings or recommendations to which they object. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150–53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (en banc). Except upon grounds of plain error, failing to object shall further bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas*, 474 U.S. at 150–53; *Douglass*, 79 F.3d at 1415.

**SIGNED** this 16th day of June, 2025.

_____
DEREK T. GILLILAND
UNITED STATES MAGISTRATE JUDGE